**James E. DIX, Appellant,**

v.

**A. P. ROLLINS, Jr., Maj. Gen., U. S. A., et al., Appellees.**

**No. 19724.**

United States Court of Appeals Eighth Circuit.

July 29, 1969.

---

Tom Mendelson, St. Louis, Mo., for appellant.

Vernon A. Poschel, Asst. U. S. Atty., Kansas City, Mo., for appellees, Calvin K. Hamilton, U. S. Atty., on the brief.

Before VAN OOSTERHOUT, Chief Judge and MEHAFFY and GIBSON, Circuit Judges.

VAN OOSTERHOUT, Chief Judge.

This is a timely appeal from the final order of the District Court dismissing upon the Government's motion the petition of James E. Dix for a writ of habeas corpus directing his release from active army service. Jurisdiction of the trial court was invoked under 28 U.S.C. A. § 2241. Upon motion of Dix, hearing upon this appeal has been expedited.

The pertinent facts have all been stipulated. No dispute as to material facts exists.

In September 1965 Dix enlisted in the United States Army Reserve in the 102nd (Ozark) Division and completed his active duty for training in February 1966. Such enlistment insulated him from being subject to draft. His reserve unit was inactivated by the Department of the Army in January 1966 and petitioner was assigned to the Ready Reserve Mobilization Reinforcement Pool.

On October 15, 1966, Congress passed Public Law 89–687, later codified as 10 U.S.C. § 673a,[1] which authorized the President to order to active duty any member of the Ready Reserve who was "not assigned to or participating satisfactorily in" a Ready Reserve Unit, had not fulfilled his statutory reserve obligation and had not served 24 months active duty.

The President delegated his authority to the Secretary of Defense by Executive Orders No. 11327 and 11366.

The Secretary of Defense issued Department of Defense Directive 1215.13 (which later became Part 100 of 32 CFR) which was published at 32 FR 3829.

On March 12, 1967, the Department of the Army sent letters to all members of the Mobilization Pool setting forth the policies of the regulation. The letter bore the heading "Subject: New Policy Governing Satisfactory Participation in Reserve Components Units." The letter stated that those who believed they were eligible for retention in the pool due to inactivation of their unit or for other reasons should provide the Army with information for purposes of verifying such eligibility. The letter advised the recipient that he will be vulnerable for involuntary order to active duty on or after July 1, 1967, if he had not: "c. Established your eligibility for retention in the Ready Reserve Pool."

Dix provided information that his unit had been deactivated and he then received a reply reading: "Since you are unable to participate in a troop program unit by reason of action taken by the Government, such as relocation, reorganization, or inactivation of a unit, you will be retained in the Ready Reserve Pool. You are not subject to call to Active Duty under the provisions of Public Law 89–687."

Dix had been looking around for a reserve unit connection but abandoned such efforts after receiving the letter.

Subsequent to this and prior to March 30, 1968, the only changes in the law, regulations or directives affecting reserves were the codification of Public Law 89–687, the issuance of a new delegation of authority to the Secretary of Defense by Executive Order No. 11366, the publication of the regulation referred to above in 32 CFR Part 100 and the issuance of an additional regulation, 32 CFR Part 127, which stated in part that "Uniform policies for the implementation of this authority by the Secretaries of the Military Departments are prescribed by Part 100 of this subchapter."

On March 30, 1968, the deputy Secretary of Defense, pursuant to authority vested in him, issued a "Memorandum for Secretaries of the Military Departments." This memorandum first noted that under the unsatisfactory performance element of 10 U.S.C. § 673a, the directive published at 32 CFR Part 100 had provided that members assigned to

---

1. On June 30, 1967, Public Law 89–687 was codified into the body of Military Law, 10 U.S.C. § 673a, and the previous limitation of Presidential authority to June 30, 1968, was removed. Section 673a reads:

"§ 673a. Ready Reserve: members not assigned to, or participating satisfactorily in, units

(a) Notwithstanding any other provision of law, the President may order to active duty any member of the Ready Reserve of an armed force who—

(1) is not assigned to, or participating satisfactorily in, a unit of the Ready Reserve;

(2) has not fulfilled his statutory reserve obligation; and

(3) has not served on active duty for a total of 24 months.
* * *"

the pool by unit deactivation would be retained in the pool. The memorandum then authorized the Military Departments to implement "that element of § 673a, Title 10, U.S.C., concerning an individual 'not assigned to a unit' irrespective of the reasons he is not affiliated with a unit." The memorandum included the following statement: "This authority may be exercised by the Military Departments concerned only during any future partial or general mobilization of the Reserves."

This memorandum was never published in the Federal Register and there is no evidence in the record that the petitioner had actual notice of it prior to his call to active duty. On May 15, 1968, petitioner was sent notice of call to active duty pursuant to the authority contained in 10 U.S.C. § 673a.

The notice made reference to the prior notification of exemption from active duty because of the inactivation of his unit and then stated: "This exemption, however, did not affect your liability for active duty under mobilization conditions."

■ Petitioner pursuant to such order reported for active duty and subsequently commenced this action. Dix in the trial court and here states the primary issue upon which he relies for reversal as follows:

"Petitioner's involuntary order to active duty from the Ready Reserve Pool under Public Law 89–687, 10 U. S.C. § 673a and Executive Order 11366 was in direct violation of the Department of Defense regulation contained in 32 C.F.R. Part 100 and thereby unlawful in view of petitioner's status as a former member of a reserve unit inactivated by the government. The position of the government that the regulation was changed prior to petitioner's said order cannot be maintained because there was a failure of compliance with the method prescribed by Congress in the Administrative Procedure Act."

It is undisputed that the provision of the memorandum of March 30, 1968, heretofore referred to, making all Ready Reservists, subject to certain exceptions not here material, subject to involuntary call to duty irrespective of the reason that they were not assigned to a unit, was not promulgated in the manner required of regulations by the Administrative Procedure Act, in that it was not published in the Federal Register as required by 5 U.S.C.A. § 552(a). It is likewise established that Dix had no notice of the memorandum prior to his call to active duty.

It is the Government's position that 32 CFR Part 100 does not establish a policy for calling to active duty reservists not assigned to a unit because the unit had been deactivated, but that it only sets out a policy for call to active duty with respect to members of the Ready Reserve not participating satisfactorily. The trial court agreed with the Government's contention, stating: "The President always had the authority to order those men not assigned to a unit to active duty. But the persons to whom he delegated this authority choose not to use it in the case of Pool members, as is apparent from DoD Directive 1215.13, [32 CFR Part 100] which implemented only the unsatisfactory performance element of the statute."

We believe such to be a proper construction of 32 CFR Part 100. The title assigned to such directive is "Involuntary Order to Active Duty of Ready Reservists for Unsatisfactory Performance of Obligation." Section 100.1, "Purpose", states, "This part prescribes uniform policy for compliance measures * * * against those members of the reserve components without prior military service who enlist or have enlisted directly into units of the Ready Reserve but do not participate satisfactorily."

Section 103, "Policy", states that persons enlisted in the Reserve are expected to participate satisfactorily in units of the Reserve for the full period of their Ready Reserve obligation "unless except-

ed in accordance with subparagraph 2 of this paragraph" and further provides that those who do not satisfactorily participate will be ordered to active duty. Subparagraph 2 under "Exceptions to this Policy" includes individuals unable to participate in a unit by reason of action taken by the Military Service (e.g., unit inactivation) rather than because of their own actions, who will be retained in the Ready Reserve Pool.

We believe the subsection 2 exceptions just quoted clearly indicate that the satisfactory performance standard is not being imposed or applied to persons like Dix whose unit has been deactivated by the Government.

The letter received by Dix, heretofore quoted, conforms to this interpretation. It is true that the last sentence of the letter reading, "You are not subject to call to Active Duty under the provisions of Public Law 89–687", is of course a broad statement and in light of the previous portion of the letter indicating that Dix is to be retained in the Ready Reserve Pool cannot reasonably be read as granting Dix a permanent exemption from call to active duty. Upon the basis of the record as a whole, in our view it was designed to go no further than to inform him that he was not to be penalized or activated for failure to perform reserve duties. There is nothing in § 673a, the Executive Orders or the regulations which would support a conclusion that members of deactivated units will forever after be exempt from liability to an involuntary call to active duty. Thus we reject Dix's contention that a regulation conforming to the requirements of the Administrative Procedure Act, amending or changing 32 CFR Part 100, is a prerequisite to an involuntary order calling Dix to active duty.

The determination by the President and those lawfully designated to act for him as reflected by the memorandum of March 30, 1968, reflects a determination that a greater need existed for activating reservists and that all reservists not assigned to a unit and not exempted by statute or regulation should be subject to an active duty call. This could be considered a new policy dictated by the increased need for reservists, but such policy in no way related to the policy of activating reservists because of unsatisfactory performance of reserve duties. The new policy reflected by the memorandum is in no way inconsistent with the policy set forth in 32 CFR Part 100. Under the memorandum, the manner in which reserve duties are performed is given no significance. The calling of reservists such as Dix whose units had been inactivated is not based upon unsatisfactory performance of duties but upon the increased need in the national interest.

Title 10 U.S.C.A. § 673a vests broad powers in the President to call all members of the Ready Reserve to active duty. Dix does not contend that any of the exclusory provisions of the statute apply to him. Neither the statute nor the Executive Order requires the promulgation of a regulation to implement it.

No decision has been cited or found adjudicating the precise issue before us. The power of the President and his authorized representatives to call individual reservists and reserve units to active duty has been uniformly liberally construed. Adams v. Clifford, D.C. Hawaii, 294 F.Supp. 1318; Fox v. Brown, S.D.N.Y., 286 F.Supp. 855, affd. 402 F.2d 837 (2 Cir.); Winters v. United States, E.D.N.Y., 281 F.Supp. 289, affd. 390 F.2d 879 (2 Cir.); Morse v. Boswell, D.C.Md., 289 F.Supp. 812, affd. 401 F.2d 544 (4 Cir.).

It is a matter of public knowledge that the need for personnel increased by reason of the acceleration of the war in Vietnam and other incidents between March of 1967 and March 30, 1968. On April 10, 1968, the President issued Executive Order 11406 authorizing the call to active duty of any unit of the Ready Reserve.

It is interesting to note that in Morse v. Boswell, supra, a member of a unit attacks his order to active duty upon the ground that activation of the units cre-

ates a heavier service burden on the individual unit members than the provisions for activation of individual reservists and hence is discriminatory. Such contention was rejected.

■ There is considerable doubt whether the discretion vested in the President and his designatees by statutes, Executive Orders and regulations is reviewable at all. See Fox v. Brown, 2 Cir., 402 F.2d 837, 840. In any event, it is clear that the petitioner has failed to meet the heavy burden resting upon him to show that the President and his authorized representatives abused the discretion vested in them in calling him to active service. We note that 32 CFR Part 126 provides a procedure for military review of any reservist's claim for exemption or release. The record does not show that Dix has availed himself of such procedure. We hold that Dix has failed to demonstrate that his involuntary call to duty was invalid in any respect.

■ Dix's additional contention that the Government is equitably estopped under the circumstances of this case from calling him to active duty lacks merit. We do not read the letter of April 28, 1967, hereinabove quoted and discussed, as giving Dix any reason to believe that he is permanently exempted from a call to active duty. We find nothing in the statute or the regulations which could reasonably give him such assurance. Dix by his enlistment in the reserves subjected himself to call to active duty under terms prescribed by the statutes and regulations. As we have heretofore pointed out, he was not called to active duty for failure to observe drill requirements or reserve duties but was only called after a proper determination was made that a substantial need existed for calling reservists to active duty. Additionally, it is by no means certain that Dix was prejudiced by foregoing attempts to affiliate with a reserve unit. Units were also called to active service and there would be no way for Dix to know that a unit which he might join

would or would not subsequently be called to active duty.

■ Moreover, it is a general rule that the doctrine of estoppel is not applicable against the United States. Utah Power & Light Co. v. United States, 243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791; United States v. Ulvedal, 8 Cir., 372 F.2d 31, 35; Shepard Engineering Co. v. United States, 8 Cir., 289 F.2d 681, 682; Walker-Hill Co. v. United States, 7 Cir., 162 F.2d 259, 263.

The judgment appealed from is affirmed.