UNITED STATES ex rel. John L. LEWIS,
Petitioner,

v.

Melvin LAIRD, as Secretary of Defense,
et al., Respondents.

Civ. A. No. S–4964.

United States District Court,
S. D. Illinois, S. D.

Feb. 1, 1972.

Edward T. Stein, Chicago, for petitioner.

Max J. Lipkin, Asst. U. S. Atty., Peoria, Ill., Max Goodwin, Asst. U. S. Atty., Springfield, Ill., for respondents.

DECISION AND ORDER

ROBERT D. MORGAN, District Judge.

This case arises on petition for habeas corpus or mandamus by a member of the United States Army Reserve in a unit at Decatur, Illinois. The court is satisfied of jurisdiction and venue. Neither is disputed. Petitioner seeks voiding of a

military order to report for active duty for training and also seeks discharge from the military service. By order of court dated December 30, 1971, the order to report for active duty was temporarily suspended as to petitioner to permit hearing and consideration of the case.

In answer to an order to show cause why the requested relief should not be granted, defendants do not deny any facts alleged. They expand upon them with some documentation, and ask dismissal of the petition as a matter of law. At a hearing on January 7, 1972, it appeared that there is no substantial dispute on any material fact. Petitioner introduced one exhibit, being a written acknowledgment of understanding of service requirements executed by him on the date of enlistment (Pet. Ex. 1). No testimony was offered and the matter was submitted to the court on the record before it.

The facts before the court are that petitioner enlisted in the Army Reserve on March 23, 1970 by executing an Enlistment Contract, a copy of which is attached to the Answer herein, as well as the acknowledgment mentioned above. He has since performed assigned duties thereunder, except for the order to report for active duty which is here challenged. The enlistment was with the knowledge of and upon recommendation of petitioner's then and present employer, a consulting engineering firm. The basis of challenge to the order to report and request for discharge is that Army regulations and the enlistment contract itself specifically provided for entry on active duty for limited term training "within 120 days" after enlistment, and that such entry was ordered instead over 20 months (some 600 days) after enlistment. Petitioner asserts that this is a material breach of the enlistment contract, justifying recision thereof. He alleges further that his present work, developed in the interim, is of such critical community importance as to justify discharge from the Army Reserve under Army regulations. Denial of the formal

request for discharge by the Army and the order to report for active duty precipitated this law suit. Defendants deny only the legal conclusions that the contract of enlistment should be rescinded as a matter of law and that any case for discharge or delay has been made as a matter of law on the basis of petitioner's present work. Both sides have furnished the court with citations to numerous prior published decisions of courts of review which they believe support their respective positions.

No case is found involving the precise factual situation before this court, but Orloff v. Willoughby, 345 U.S. 83, 73 S. Ct. 534, 97 L.Ed. 842 (1953), involved a somewhat analogous situation. In *Orloff*, a psychiatrist who was a member of the Army Reserve was called to active duty because of a need for his professional specialty. The case arose out of the failure of the Army to grant him a commission as a medical officer and to assign him to duties within the area of his medical specialty because of his refusal to subscribe the then prescribed loyalty oath or to answer questions whether he had ever been a member of the Communist Party and related organizations. The doctor contended, *inter alia*, that the court should order his discharge on the ground that the basis of his call-up had been his medical specialty, a fact which would preclude his assignment to duties outside his specialty.

In rejecting that contention, the Court said, in pertinent part:

> "We know that from top to bottom of the Army the complaint is often made, and sometimes with justification, that there is discrimination, favoritism, or other objectionable handling of men. But judges are not given the task of running the Army. The responsibility for setting up channels through which such grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly

government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters. While the courts have found occasion to determine whether one has been lawfully inducted and is therefore within the jurisdiction of the Army and subject to its orders, we have found no case where this Court has assumed to revise the duty orders as to one lawfully in the service." Orloff v. Willoughby, 345 U.S. 83, 93–94, 73 S.Ct. 534, 540 (1953).

No case is found in which there has been a departure from the principle pronounced in *Orloff*. The courts have uniformly held that in matters involving military orders issued within the discretionary power given to the military services by the Congress, civil courts are without the power to judge whether a proper balance between military needs and personal rights has been forged. E. g., Anderson v. Laird, 437 F.2d 912, 914 (7 Cir. 1971); Gianatasio v. Whyte, 426 F.2d 908, 911 (2 Cir. 1970), cert. denied, 400 U.S. 941, 91 S.Ct. 234, 27 L.Ed.2d 244; Nixon v. Secretary of Navy, 422 F.2d 934, 939 (2 Cir. 1970); Dix v. Rollins, 413 F.2d 711, 716 (8 Cir. 1969); Fox v. Brown, 402 F.2d 837, 840 (2 Cir. 1968), cert. denied, 394 U.S. 938, 89 S.Ct. 1219, 22 L.Ed.2d 471.

Though all cases above cited are factually distinguishable from this cause, there is present in this cause no fact which would empower this court to interfere with the order in issue.

Petitioner's enlistment in the Army Reserve was voluntary. By enlistment he submitted himself to military discipline and to the performance of duties in response to military commands.

It seems doubtful that the extraordinary remedy sought would ever be available to obtain judicial review of an alleged breach by the Army of the provisions of a contract of enlistment. See Orloff v. Willoughby, *supra*. However, this court need not decide that question. It is apparent that there is not shown to be any breach of contract in this cause.

For purposes of this opinion, it is assumed that petitioner's "Acknowledgment of Understanding of Service Requirements" is a part of his enlistment contract. That instrument stated, in pertinent part:

██ "I will enter on active duty for training * * * within 120 days of this date (March 23, 1970) *unless a delay for a longer period is authorized or directed by the Department of the Army*." (Emphasis supplied.) Thus, if the quoted language must be construed as a covenant in the enlistment contract, it is inherent in the language employed that the 120-day provision is conditioned upon the discretionary power of the Department of the Army to "authorize" or "direct" a "longer period" of delay between petitioner's enlistment and the order for his active duty for training. The delay for some 600 days is a matter entrusted to military discretion, and not a proper subject of judicial inquiry.

██ Petitioner's contention that the order for active duty was violative of Army Regulation 135–200 is equally as specious as the argument that there was a breach of contract. The basic authority for the order is contained in an Act of Congress, which provides, in pertinent part:

" * * * Each person enlisted under this subsection shall perform an initial period of active duty for training of not less than four months to commence *insofar as practicable* within 180 days after the date of that enlistment." 10 U.S.C. 511(d). (Emphasis supplied)

The pertinent part of the Regulation adopted pursuant to that statute is set forth in the margin.[1] It is apparent

1. "It is mandatory that all nonprior service personnel required to perform an initial tour of ACDUTRA as a condition of enlistment enter training not later than 120 days after date of enlistment, except as indicated below. [Expressed bases for delay beyond 120 days, not here pertinent.]

that the Regulation is designed to establish guidelines for those persons charged with the administration of the reserve program, not to create the right in enlistees to be ordered to training duty within a specified, limited time. That conclusion is inherent in the language of the Regulation. Thus, the Regulation directs that enlistees enter training not later than 120 days after date of enlistment, with stated exceptions not shown to have any application to the factual background of this case. It continues with the statement that delays beyond 120 days for reasons other than those stated exceptions "will require approval by Headquarters, Department of the Army."[2]

The answer to the order to show cause reveals no reason why there was a delay of some 600 days between petitioner's enlistment and the order calling him to active duty for training. Any such reason is wholly immaterial. The statute must be construed as giving the military services discretion in the timing of their ordering of personnel to training duty.

Finally, petitioner's contention that he should be discharged from the Army Reserve, or that the training order should be stayed for the reason that his compliance with the order would entail extreme community hardship, is wholly frivolous.

It is alleged that petitioner is a "project engineer" possessed of "unique skills that cannot be readily be replaced," and that he is enrolled in an air pollution control course.

Under Army Regulation 601–25, Par. 1–12(b), the "extreme community hardship" requirement is met only if the service performed by the reservist is essential to the maintenance of health, safety or welfare of his community; the service cannot be performed by other persons residing in the area and the reservist cannot be replaced in the community by another person who can perform such services.

The allegations of this complaint do not even suggest that petitioner could meet any of those requirements. Moreover, the rejection of a claim of extreme community hardship is a matter entrusted by the Congress to military discretion, a decision which would seldom, if ever, be reviewable by the courts. E. g., Roth v. Laird, 446 F.2d 855, 856–857 (2 Cir. 1971); Schonbrun v. Commanding Officer, 403 F.2d 371 (2 Cir. 1968), cert. denied, 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460.

In *Schonbrun*, the petitioner sought exemption from active duty, based upon his contention that his wife suffered a psychiatric disorder which his absence would tend to intensify, and upon the basis of his employment as a teacher of a class of severely disturbed boys in a special service school. Though the court characterized both the personal and community claims as appealing, it said that the call-up order being there challenged was the type of discretionary action by the military service which is not subject to judicial review. Schonbrun v. Commanding Officer, *supra*, 403 F.2d at 374–375. The same view was stated in *Roth*, which involved a claim by a physician that his call to active duty created an extreme hardship in his community.

It seems apparent on the face of this complaint that it is probably now more inconvenient for petitioner to serve his active duty for training than it would have been had the order issued at an earlier time. The file will not support a stronger case in his favor.

Petitioner voluntarily enlisted in the Army Reserve. He became a part of the nation's reserve program, subject to

---

"(4) Delays beyond 120 days for reasons not listed above will require approval by Headquarters, United States Army. * * *"

A R 135–200, Par. 26b.

2. Change 6 to the Regulation, effective April 22, 1970, changed the 120-day delay period to a period of 180 days. For purposes of this opinion it is immaterial whether the delay period, as it related to petitioner, was 120 days or 180 days.

orders deemed by his superiors necessary to the conduct of that program. The order for petitioner to report for training duty, and the rejection by the Army authorities of his claim for exemption from, or delay of, that order, were acts within the discretion of the Army. No basis for judicial interference exists.

It is ordered, accordingly, that the order entered herein on December 30, 1971, temporarily staying enforcement of the order commanding petitioner to report for active duty be, and the same is, discharged. Judgment is hereby entered dismissing the petition.