403 F.2d 371
 UNITED STATES of America ex rel. Stephen F. SCHONBRUN, Appellant,
v.
COMMANDING OFFICER, ARMED FORCES or the Secretary of the
Army, or his Agents and/or Servants or the Commanding
Officer, Commanding General or His Designee, First Army
District, Fort Wadsworth, Staten Island, New York, Appellee.
 No. 572, Docket 32505.
 United States Court of Appeals Second Circuit.
 Argued July 22, 1968.
Decided Nov. 7, 1968, Certiorari Denied March 24, 1969, See
89 S.Ct. 1195.
 
 Bernard Rosenbloom, Brooklyn, N.Y., for appellant.
 Ralph A. Bontempo, Asst. U.S. Atty. (Joseph P. Hoey, U.S. Atty., for the Eastern District of New York), for appellee.
 Before LUMBARD, Chief Judge, and FRIENDLY and HAYS, Circuit Judges.
 FRIENDLY, Circuit Judge:
 
 
 1
 Stephen Schonbrun, a member of the Army Reserves, has sought a writ of habeas corpus releasing him from an order to report for active duty.
 
 
 2
 Schonbrun enlisted in the reserves on July 28, 1963, and is now a member of the 203d Transportation Company. The unit was activated on May 13, 1968. Anticipating this, in late April he wrote two letters to his Commanding Officer seeking exemption from active duty pursuant to Army Regulations because of extreme personal and community hardship.[1] As to 'extreme personal hardship,' he submitted that his wife was suffering from a psychiatric disorder, that his presence in the household materially aided her and tended to promote her recovery, and that his departure would have a serious and immediate deteriorating effect. Two psychiatrists and a psychologist attested the seriousness of her ailment; one of the psychiatrists and the psychologist confirmed the likelihood that Schonbrun's departure would have a harmful effect. Further confirmation was afforded by a letter from the Rabbi of the Schonbruns' synagogue and by a Lutheran pastor. The case for 'extreme community hardship' was that Schonbrun had been teaching a class of 10 severely disturbed boys in a Special Service School located in a poverty area in Queens, with great success. His value there was attested by the Principal of the school, the Assistant Principal, and the Social Studies Chairman.
 
 
 3
 On May 6 Schonbrun was given a 30day extension and was told to contact Fort Wadsworth for further instructions before this expired. While not officially notified, he learned that his application had been denied. He claims this was without assignment of reasons, although Army Regulations 601-25, 3-14, require that when the area commander denies the request, he must 'notify the member of such denial and the reason therefor, together with his right to appeal such decision.' Schonbrun appealed, submitting additional letters from the President of the Parents' Association of the School and the Chairman of the Permanent Coordinating Committee of the Permanent Coordinating Council of Jamaica, N.Y., and a further letter from his wife's psychiatrist. He was notified that the appeals board had denied this on the ground that 'the case did not meet the criteria for exemption form involuntary call to active duty as established in AR 601-25.' An application for reconsideration offering additional evidence and questioning the methods and procedure of the appeals board proved fruitless, and Schonbrun was ordered to report for active duty.
 
 
 4
 He then began this proceeding for habeas corpus in the District Court for the Eastern District of New York. Judge Weinstein denied the application. On the community aspect, he said that the weighing of hardship to the community in losing the reservist and of hardship to the United States in losing his service on active duty was 'peculiarly the kind of decision that must be made by the military.' On the personal aspect he thought this was 'not a matter peculiar to this reservist' since 'to a lesser or greater degree wives and families of those who are called into the Armed Services suffer great hardship.' After granting a re-hearing to take further evidence, the nature of which does not appear, he adhered to his decision and dismissed the writ. This court granted a stay pending appeal.
 
 
 5
 The jurisdiction of the district court to grant a writ of habeas corpus is governed by 28 U.S.C. 2241, which makes the writ available only when a petitioner is 'in custody.' The statute 'does not attempt to mark the boundaries of 'custody," and courts have long recognized that 'besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been though sufficient * * * to support the issuance of habeas corpus.' Jones v. Cunningham, 371 U.S. 236, 238-240, 83 S.Ct. 373, 375-376, 9 L.Ed.2d 285 (1963); see also Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968). Decisions make clear that Schonbrun's status as a member of the armed forces imposes such a restraint on his liberty. Jones v. Cunningham, supra, 371 U.S. at 240, 83 S.Ct. 373; U.S. ex rel. Altieri v. Flint, 54 F.Supp. 889 (D.Conn.1943), aff'd on opinion below, 142 F.2d 62 (2 Cir. 1944); Hammond v. Lenfest, 398 F.2d 705, 710-712 (2 Cir. 1968); see R. Sokol, A Handbook of Federal Habeas Corpus 5.3 (1965). An inquiry into the legality of this restraint would be within the traditional function of the writ.
 
 
 6
 Schonbrun does not seek, however, to be discharged from membership in the armed forces. He has enlisted voluntarily in the Army and concedes its continued jurisdiction over him; he challenges only the order requiring him to report for active duty. He differs in this respect from one who seeks to be discharged entirely from the military, as in Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953), and Hammond v. Lenfest, supra, or who challenges the validity of imprisonment under court-martial proceedings, cf. Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953). Generally habeas corpus is available only to a petitioner who is entitled to release from unlawful restraint, and is not a means of testing the conditions of admittedly lawful custody. Application of Hodge, 262 F.2d 778 (9 Cir. 1958); Harris v. Settle, 322 F.2d 908 (8 Cir. 1963), cert. denied, 377 U.S. 910, 84 S.Ct. 1171, 12 L.Ed.2d 179 (1964); U.S. ex rel. Knight v. Ragen, 337 F.2d 426 (7 Cir. 1944). On the other hand, habeas corpus will lie to test the legality of a change from probation or parole to imprisonment. Ex parte Hull, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941); Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967) (state habeas); Arketa v. Wilson, 373 F.2d 582, 584 (9 Cir. 1967). Arguably a transfer from reserve status to active duty is attracted by the analogy of this latter line of cases rather than the former, although a change in duty assignments of a soldier or sailor in active service would not be. Yet to hold that habeas lies in such a case would require a rather close distinction of the decisions that it is not available to a selective service registrant before induction. See De-Rozario v. Commanding Officer, 390 F.2d 532, 535-536 (9 Cir. 1968), and authorities there cited.
 
 
 7
 Whether or not habeas corpus is available, the district court was free to treat the petition as one for mandamus under 28 U.S.C. 1361, which vests the district court with 'original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.' Schonbrun makes no claim that the Army has not acted 'within its jurisdiction under valid law,' see Winters v. United States, 281 F.Supp. 289, 299 (E.D.N.Y.), aff'd, 390 F.2d 879 (2 Cir. 1968); Fox v. Brown, 402 F.2d 837 (2 Cir. 1968) (Lumbard, C. J., concurring); his complaint is of an abuse of discretion in denying his request for an exemption. The committee reports recommending enactment of 28 U.S.C. 1361 made clear that the courts were 'not to direct or influence the exercise of discretion of the officer or agency in the making of the decision,' see 2 U.S.Code Cong. & Adm. News, 87th Cong. 2d Sess., pp. 2784, 2785 (1962), and the statute has been so construed, Smith v. United States, 333 F.2d 70 (10 Cir. 1964). We recognize that, despite this, official conduct may have gone so far beyond any rational exercise of discretion as to call for mandamus even when the action is within the letter of the authority aranted. See Jaffe, Judicial Control of Administrative Action 181-82 (1965); Byse & Fiocca, Section 1361 of the Mandamus and Venue Act of 1962 and 'Nonstatutory' judicial Review of Federal Administrative Action, 81 Harv.L.Rev. 308, 333-35 (1967). But the necessity for expedition in the military's administration of personnel admittedly subject to its jurisdiction raises a serious question whether the courts should apply this principle with respect to a call-up order, and if that be the correct result in mandamus, the result should not be different even if habeas or an injunction are also available remedies. Contrast Wong Wing Hang v. I.N.S., 360 F.2d 715, 717-18 (2 Cir. 1966).
 
 
 8
 The very purpose of a 'ready reserve' is that the reserve shall be ready. Under the regulations, delay or exemption from active duty in hardship cases is authorized but not required. The hardship must be 'extreme,' and while the regulations wisely give more specific content to this criterion, a good deal is necessarily left to the judgment of the commanding officer. In contrast to the yea or nay character of entitlement to the conscientious objection exemption, administration of the hardship exemption necessarily involves a balancing of the individual's claims against the nation's needs, and the balance may differ from time to time and from place to place in a manner beyond the competence of a court to decide. While no one could reasonably assert that the country would perish if Schonbrun did not serve with his company, delay in the call-up of a reservist, even during the period necessary for judicial consideration of his claim to discretionary exemption, inevitably means either a gap in the unit or the call of another reservist who otherwise might not have been reached. Although Schonbrun's case is appealing, especially his personal hardship claim which was scarcely disposed of by the comment of the district judge, the courts must have regard to the flood of unmeritorious applications that might be loosed by such interference with the military's exercise of discretion and the effect of the delays caused by these in the efficient administration of personnel who have voluntarily become part of the armed forces. We conclude that this is a subject on which civil review of discretionary action by the military should be declined-- and this irrespective of the rubric under which the action is brought.[2] While the Army's alleged violation of its own regulations, in failing to give notice of denial of his initial request and the reasons for it, might stand differently, Schonbrun was not prejudiced thereby.
 
 
 9
 Affirmed.
 
 
 
 [1]
 The applicable provisions of Army Regulation 601-25 are:
 '3-2. Delay and exemption policies.
 * * * b. * * * (3) * * * Delay or exemption of all Ready reservists, other than those described in (1) and (2) above, is authorized in accordance with either of the following criteria:
 (a) In exceptional cases when the involuntary order to active duty will result in an extreme personal or community hardship (para. 1-12); '1-12. Criteria for hardship conditions. a. Extreme personal hardship. ' (1) Illness of a member of immediate family. When, in the opinion of the attending physician, the illness of the member is such that--
 (a) Fatality appears to be imminent; or
 (b) Presence of the reservist is an important factor in the recovery of the patient and his immediate departure would have a serious effect upon the patient. 'b. Extreme community hardship. In general, this requirement will be met only when all of the following conditions are determined to exist:
 (1) The service performed by the reservist is essential to the maintenance of health, safety, or welfare of his community.
 (2) The service cannot be performed by other persons residing in the area concerned.
 (3) The reservist cannot be replaced in the community by another person who can perform such services. '3-11. Action on requests for delay or exemptions.
 (c) Requests for delay or exemption submitted on the basis of extreme personal or community hardship--
 (1) May be considered when the extreme personal or community hardship condition occurs not more than 6 months prior to receipt of alert or active duty orders.
 (2) May not be considered when such hardship condition existed at the time applicant submitted DA Form 1140-1 (Army Reserve Status Verification Questionnaire) as prescribed in AR 140-25, whichever is the more recent, and applicant failed to request transfer from the Ready Reserve by reason of hardship.'
 
 
 [2]
 The extent to which the Administrative Procedure Act applies to actions of the military is far from clear. Section 4, which governs rulemaking, excludes 'any military, naval or foreign affairs function of the United States,' and 5, which deals with adjudication, exempts 'the conduct of military, naval or foreign affairs functions.' However, the breadth of the definition of 'agency' in 2(a) indicates that the 'agency action' of which 10 speaks embraces far more than adjudication and rulemaking. 'Agency' appears to include the military, except 'courts martial and military commissions,' 'military or naval authority exercised in the field in time of war or in occupied territory,' and the Selective Service System. Thus, the call up of reservists would seem to be subject to the provision of 10 that, except so far as 'statutes preclude judicial review' or 'agency action is by law committed to agency discretion,' judicial review shall be afforded to 'any person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute.' Our holding here that the correctness of a discretionary refusal to grant the hardship exemption is not subject to review by the courts necessarily represents a determination that such a refusal 'is by law committed to agency discretion' so far as to render inapplicable the provisions of 10(e). See 4 Davis, Administrative Law Treatise 28.16, especially pp. 81-82 (1958)