Eric **HARRIS**, Plaintiff,

v.

Major General J. W. **KAINE**, Commanding General, 77th United States Army Reserve Command, et al., Defendants.

No. 71 Civ. 1704.

United States District Court,
S. D. New York.

June 29, 1972.

James J. Foster, New York City, for plaintiff.

David Land, Asst. U. S. Atty., New York City, for defendants.

## MEMORANDUM

TENNEY, District Judge.

This case is before the Court on plaintiff's motion for summary judgment,

Fed.R.Civ.P. 56, and defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1) and (6).

As factual background, plaintiff, Eric Harris, is a man who within the spirit of the times has chosen to wear his hair long. He claims that he wears his hair in this fashion as a measure of his personal privacy and liberty, to facilitate the exercise of his right to freedom of association, to express certain political and cultural opinions and to protest certain mores, standards and conditions in today's society. While normally the length of plaintiff's hair would be a matter of personal choice and would present no particular problem, he has a dual role as a civilian and as a part-time soldier in the Army Reserves and the Army has taken objection to the length of plaintiff's hair. Specifically, plaintiff is a member in good standing of the 77th United States Army Reserve Command (ARCOM) who, outside of the days spent in summer camp, spends only approximately $2\frac{1}{4}\%$ of his time as a soldier. In his complaint, plaintiff alleges that pursuant to Army Regulation 600–20 (AR600–20), in or about December 1970, he was expelled from an Army Reserve drill solely for the reason that he wore a short-haired wig, and that as a result of that expulsion he was charged with not having satisfactorily partici-

pated in that drill and was denied his pay for the meeting. Plaintiff further alleges that if he is charged with five such failures to satisfactorily participate, he is subject to being ordered to active duty for a period in excess of 18 months pursuant to AR135–91, and that since he is now earning in excess of $18,000 per year, such induction would cost him more than $10,000. Plaintiff contends that AR600–20 is invalid and unenforceable by defendants in that the regulation is in excess of defendants' statutory authority and unnecessarily infringes upon plaintiff's constitutionally protected right to wear his hair in any manner he chooses. Jurisdiction is based upon 28 U.S.C. §§ 1331, 1346(a)(2), 1361 and 5 U.S.C. §§ 701–04.[1] Defendants are various officials of the U. S. Army and each has been sued in his official capacity.

Before turning to the motions, it is necessary to set out the statutory and regulatory framework underlying this action. Section 673a of Title 10 of the United States Code authorizes the President to order to active duty any member of the reserves who is not "participating satisfactorily" in his unit. Section 456 of Title 50 U.S.C. App. further provides that members of reserve units are exempt from induction as long as they are satisfactorily participating in their reserve units. Army Regulation 135–91, issued pursuant to the above authority provides that a member is not satisfac-

---

1. 28 U.S.C. § 1331(a) provides:
   "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."
   28 U.S.C. § 1346(a) provides:
   "The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:
   * * * * *
   (2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive

department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."
   28 U.S.C. § 1361 provides:
   "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."
   5 U.S.C. § 702 provides:
   "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

torily participating "unless he is in the prescribed uniform, presents a neat and soldierly appearance, and performs his assigned duties in a satisfactory manner as determined by the unit commander." AR 135–91(5)(d)(2). Failure to participate satisfactorily leads to loss of attendance credit and five unexcused absences subjects a member to possible induction to active duty. Finally, the challenged regulation, AR600–20, provides in part:

"31. Appearance and Conduct

a. Appearance

\* \* \* \* \* \*

(6) The wear of a wig or hair piece by male personnel, while in uniform or on duty, is forbidden except under the following circumstances:

a. For cosmetic reasons to cover natural baldness.

b. When appropriate to cover physical disfiguration caused by accident or medical procedure.

c. When wig or hair piece is worn as indicated above it will conform to the standard hair criteria as stated."

Defendants concede the regulation applies to reservists.

■ Defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted, and for the purposes of this motion, all of the allegations in the complaint must be accepted as true. Defendants in support of their motion rely upon several decisions in this and other circuits which hold that what constitutes a neat and soldierly appearance is a matter within the discretion of the Army and that absent extraordinary circumstances, discretionary acts of the Army are not reviewable by the courts. Anderson v. Laird, 437 F.2d 912 (7th Cir. 1971); Gianatasio v. Whyte, 426 F.2d 908 (2d Cir. 1970), cert. denied, 400 U.S. 941, 91 S.Ct. 234, 27 L.Ed.2d 244 (1970); Bryne v. Resor, 412 F.2d 774 (3d Cir. 1969); Raderman v. Kaine, 411 F.2d 1102 (2d Cir.), cert. dismissed, 396 U.S. 976, 90 S.Ct. 467, 24 L.Ed.2d 447 (1969); Smith v. Resor, 406 F.2d 141 (2d Cir. 1969). Unlike these cases, however, plaintiff does not ask the Court to determine what constitutes a neat and soldierly appearance or to grant him an exception to the standard.[2] Rather, plaintiff contends that defendants have exceeded their statutory authority and unnecessarily infringed upon his constitutionally protected rights by prohibiting his wearing of a short-hair wig at drill meetings. Clearly, then the Court is faced with an *alleged* set of extraordinary circumstances to which the Court of Appeals has made reference. *E. g.,* Raderman v. Kaine, *supra,* 411 F.2d at 1105; Smith v. Resor, *supra,* 406 F.2d at 145; Fox v. Brown, 402 F.2d 837, 840 (2d Cir. 1968), cert. denied, 394 U.S. 938, 89 S.Ct. 1219, 22 L.Ed.2d 471 (1969). Therefore, plaintiff does state a claim upon which relief can be granted and defendants' motion must be denied. *See* Friedman v. Froehlke, Civil No. 71–1905–G. (D.Mass., Jan. 31, 1972).

■ Defendants have also moved to dismiss the complaint for lack of subject matter jurisdiction. That there is jurisdiction in this Court over plaintiff's

---

2. The most recent Army haircut policy is as follows:

"Haircuts, without reference to style, will conform to the following standards: (1) The hair on top of the head will be neatly groomed. The length and/or bulk of the hair will not be excessive or present a ragged, unkempt or extreme appearance. Hair will present a tapered appearance and, when combed, it will not fall over the ears or eyebrows or touch the collar except for the closely cut hair at the back of the neck. The so-called 'block-cut' fullness in the back is permitted in moderate degree. In all cases, the bulk or length of hair will not interfere with the normal wear of all standard military headgear. (2) If the individual desires to wear sideburns, they will be neatly trimmed. The base will be a clean shaven horizontal line. Sideburns will not extend downward beyond the lowest part of the exterior ear opening." Exh. A attached to Defendants' Memorandum of Law filed July 21, 1971.

claims under 28 U.S.C. §§ 1331, 1346(a) (2), and 1361 and 5 U.S.C. § 701–04 is clear. Smith v. Resor, *supra,* 406 F.2d at 145, 147–148; United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371, 374, 375 n. 2 (2d Cir. 1968), cert. denied, 394 U.S. 929, 89 S. Ct. 1195, 22 L.Ed.2d 460 (1969); Fox v. Brown, *supra,* 402 F.2d at 840; Cortright v. Resor, 325 F.Supp. 797, 808–812 (E.D.N.Y.), rev'd other grounds, 447 F.2d 245, 250–251 (2d Cir. 1971); Konn v. Laird, 323 F.Supp. 1 (E.D. Wisc.1971); Krill v. Bauer, 314 F.Supp. 965, 966 (E.D.Wisc.1970); Murray v. Vaughn, 300 F.Supp. 688 (D.R.I.1969); Fifth Avenue Peace Parade Comm. v. Hoover, 327 F.Supp. 238 (S.D.N.Y. 1971); Friedman v. Froehlke, *supra;* Susarchick v. Salcito, Civil No. 13,699 (D.Conn. April 14, 1970) (Exh. B. attached to Gov't memorandum dated May 21, 1971). *See also* Byse and Fiocca, Section 1361 of the Mandamus and Venue Act of 1962 and "Nonstatutory" Judicial Review of Federal Administrative Action, 81 Harv.L.Rev. 308 (1967). While this Court has no jurisdiction to review purely discretionary acts of the Army, it clearly has jurisdiction to determine whether the Army has stayed within its authorized discretion. Smith v. Resor, *supra,* 406 F.2d at 145, 147–148; Fox v. Brown, *supra,* 402 F.2d at 840.

Turning then to plaintiff's motion for summary judgment, defendants in their 9(g) statement[3] claim that there is only one genuine issue of material fact to be tried, *i. e.,* whether:

"Plaintiff was . . . expelled from an Army Reserve meeting in or about December 1970 for the sole reason that he wore a wig in violation of Army Regulation 600–20."

Defendants have then conceded the truth of the following facts which appeared in plaintiff's 9(g) statement and as to which plaintiff claims there is no genuine issue of fact:

"Plaintiff, when wearing a short-hair wig is able to present an appearance which would conform to the standard hair criteria stated in Army Regulation 600–20, except for that part of the Regulation which forbids the wearing of wigs.

"The wearing of a short-hair wig does not interfere with any of plaintiff's duties which he performs while in attendance at drills of his Reserve unit."[4]

Thus, defendants have, in effect, conceded that although plaintiff may fully comply with AR135–91 and is thus satisfactorily participating in drill meetings within the meaning of that regulation, he can and will be denied credit for his participation and will be subjected to possible induction to active duty if he wears a short-hair wig in violation of AR600–20 ¶ 31a(6), although the wig does not interfere with the performance

---

3. Rule 9(g) of the General Rules of this Court provides:

"Upon any motion for summary judgment pursuant to Rule 56 of the Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried.

"The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.

"*All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.*" (Emphasis added.)

4. The following facts appearing in plaintiff's 9(g) statement are also thus deemed admitted by defendants:

"1. The plaintiff, were he to be called to active duty with the Army, for a period in excess of 18 months, would suffer a net loss in earnings in excess of $10,000.

\*  \*  \*  \*  \*

"3. As a result of this expulsion, plaintiff was charged with not having satisfactorily participated in the meeting and, in addition, he forfeited his pay for the drill."

of any of his duties and although he presents a neat and soldierly appearance.

The questions facing the Court then are, in light of these facts, whether defendants have exceeded their statutory authority in promulgating AR600–20 which proscribes plaintiff's wearing of a wig at Reserve meetings and whether the regulation unnecessarily infringes upon a constitutionally protected right of plaintiff. I think the answers to both questions must be in the affirmative.

It is clear and plaintiff concedes: that he can be ordered to active duty if he is not satisfactorily participating in his reserve meetings; that he is *not* satisfactorily participating unless he presents a neat and soldierly appearance; that whether he presents a neat and soldierly appearance is within defendants' discretion; and that this Court, absent extraordinary circumstances, cannot review matters within the Army's discretion. Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L. Ed. 842 (1953); Gianatasio v. Whyte, *supra*; Raderman v. Kaine, *supra*; Smith v. Resor, *supra*. Plaintiff, however, has made the claim that since he does present a neat and soldierly appearance (and defendants have so conceded), since the wearing of a short-hair wig does not interfere with the performance of his duties at drill meetings (and defendants have so conceded), since the regulation furthers no legitimate interest of the Army, since bald and disfigured men are permitted to wear short-hair wigs that conform to Army hair standards and since plaintiff spends only 3% of his time on duty,[5] defendants have exceeded their statutory authority in promulgating a regulation proscribing his wearing of a short-hair wig while in uniform or on duty. Defendants on the other hand have offered no cogent reason for the regulation, and in fact have not been able to cite any interest of the Army that is furthered by the ban on wigs, other than a general reference to the "hazards" of long hair.[6] They seem

5. Plaintiff seems to have conceded that during the time that he is on active duty, generally an annual two week period at summer camp, defendants have the statutory authority to require that his hair conform to AR600–20 and that such an infringement upon his constitutional rights is justified.

6. Defendants do contend that the regulation is "justified" in this passage from their memorandum of law filed July 21, 1971 at page 25:

"To the extent that plaintiff needs justification for Army Regulation 600–20 it should be merely noted that plaintiff is subject to an immediate call to active duty whenever the national security requires. When called to duty, plaintiff must be ready to face emergency situations. The wearing of long hair, whether covered by a wig or not, has since the Biblical days of Absalom been subject to hazards. Additionally, even during weekly Reserve meetings there is a likelihood that wigs may fall. While the bald and disfigured may suffer embarrassment in this eventuality, they unlike plaintiff will not instantly present an untidy or unkempt appearance."

While the Court appreciates the Government's metaphorical use of the Biblical story of Absalom, 2 Kings, 18:9–15, metaphors are no substitute for facts and can often cut both ways. *Cf.* Samson and Delilah, Judges, 16:17–19.

The reference in the Government's memorandum of law to "hazards" is meaningless in light of its concession that plaintiff can perform all of the duties required of him at reserve meetings while wearing his short-hair wig. Although plaintiff as a member of the reserves is subject to an immediate call to active duty, a distinction must nevertheless be made between the amount of control it is necessary for the Army to exert over reservists and full-time soldiers. In any event without an *affidavit* of a person able to recite from his own experience the hazards involved and without a more specific recitation of the dangers involved, and a statement why these dangers are not eliminated by the wearing of a short-hair wig, the Court is unable to give much weight to the conclusory statement appearing in the *memorandum of law of the Assistant United States Attorney*. The Court refuses to speculate on the nature of these hazards. Finally, it should be noted that there is nothing in the regulation to prevent a bald or disfigured man—men who, by the way, are permitted to wear wigs and hair pieces while on active duty and

content to, in effect, argue that the matter is within the Army's discretion and thus no justification is necessary. The only justification offered by a member of the military is found in the statement of Colonel Jesse L. Wheeler, Jr., in his affidavit of May 14, 1971: "The wearing of wigs . . . was rejected since they would be worn simply as a means for avoiding the requirements of the regulation rather than for a beneficial purpose." [7] The statement of Colonel Wheeler would appear to beg the question, since when infringing upon the liberty of a man who spends 97% of his time as a civilian, it is the Army that should justify the infringement; the individual should not be forced to justify *to the Army* the unfettered exercise of his rights, especially rights which, as will be demonstrated *infra,* are constitutionally protected from unreasonable and unnecessary infringements. The statement of Colonel Wheeler lends support

to plaintiff's argument that the reason behind the regulation is an attempt to regulate a civilian aspect of reservists' lives in a manner that is unnecessary to further any interest of the Army. While an incidental infringement would certainly be permissible if it were necessary to further a legitimate interest of the Army, this Court is presently faced with a regulation that the Army is unable to justify.

While the aspect of plaintiff's personal life with which the Court is concerned (the length of his hair) may seem trivial to some, it is readily no different than an attempt by the Army to regulate other appearance aspects of plaintiff's civilian life (*e. g.,* color and style of his clothing) which bear no relationship to his satisfactory participation in reserve meetings and the regulation of which is clearly outside the scope of the authority conferred upon defendants by 10 U.S.C. § 673a (1970). [8] And while this Court

who must always be prepared to face these emergency situations—from allowing whatever hair they may have, and it could be substantial, from growing long and concealing it under their wigs and thus presenting these same alleged hazards.

With regard to the question of "instant untidiness", assuming the Government is serious in offering that as a justification for the regulation, there is no evidence of the likelihood of such wigs slipping and the chances are probably not great since in order to cover long hair a reservist would have to wear a full-head wig rather than a mere hair piece. Moreover, the situation can be quickly rectified and as indicated *supra* bald and disfigured men who choose to grow their natural hair long beneath their wigs can also present this problem.

7. Exh. B attached to Defendants' Memorandum of Law filed July 21, 1971.

8. I find the facts in this case for all practical purposes indistinguishable from a situation in which the Army concedes that a reservist satisfies all of the objective and subjective standards for satisfactory participation in drill meetings and yet is not given credit for participation because his commanding officer does not like his hair *color* or style of clothing the re-

servist wears as a civilian. While satisfactory participation is a matter that should normally be left to the Army's *discretion* for quite obvious reasons, there are situations where the Army may exceed its statutory authority or so abuse its discretion as to call for judicial review. Mindful that the Courts as a general rule do not review agency action which is by law committed to agency discretion, even abuses of that discretion, the instant case just as the hypothetical situations involving hair color and the style of one's clothing *supra,* is a situation where "official conduct . . . [has] gone so far beyond any rational exercise of discretion as to call for mandamus even . . . [though] the action . . . [may be] within the letter of the authority granted." United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371, 374 (2d Cir. 1968), cert. denied, 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460 (1969).

Hence, while this case appears to be one where the Army has exceeded its statutory authority in promulgating a regulation not in furtherance of any legitimate Army interest, if it were determined that the statute in question granted the Army the discretion it claims, I would find that the Army exceeded the permissible bounds of that discretion.

clearly has no jurisdiction to determine whether the appearance standards of the Army are arbitrary or an abuse of discretion, the discretionary determination has already been made by the Army and defendants concede that plaintiff in his wig satisfies those standards and can perform all duties required of him.

Furthermore, the scope of the authority delegated to defendants by 10 U.S.C. § 673a to determine whether a reservist is satisfactorily participating in drills would appear to be limited to considerations that affect that participation at least in some small way and does not extend to the unnecessary regulation of his civilian life. AR600–20 ¶ 31a(6) fails this test, since its only apparent purpose and effect, in light of the factual concessions defendants have made, the statement of Colonel Wheeler, and the fact both reservists and *full-time* bald and disfigured soldiers are permitted to wear wigs, is the regulation of the civilian lives of reservists.

Therefore, I am compelled to conclude that AR600–20 ¶ 31a(6) is invalid as in excess of statutory authority to the extent it provides that a *reservist* with long hair who by wearing a short-hair wig satisfies the Army's requirement that he present a neat and soldierly appearance and who while wearing such a wig can fully perform all of the duties required of him is nevertheless not satisfactorily participating in reserve meetings, and enforcement of the regulation will be enjoined.[9]

There is a second and separate basis for invalidating AR600–20 ¶ 31a(6) and that is because it unnecessarily infringes upon plaintiff's constitutional right to wear his hair in any style he chooses. The Court of Appeals for the Second Circuit apparently has yet to pass upon the question whether an individual has such a constitutionally protected right, but I am persuaded by those decisions which recognize it. Bishop v. Colaw, 450 F.2d 1069 (8th Cir. 1971); Crews v. Cloncs, 432 F.2d 1259 (7th Cir. 1970); Richards v. Thurston, 424 F.2d 1281 (1st Cir. 1970); Breen v. Kahl, 419 F.2d 1034 (7th Cir. 1969), cert. denied, 398 U.S. 937, 90 S.Ct. 1836, 26 L.Ed.2d 268 (1970); Friedman v. Froehlke, *supra. Cf.* Gfell v. Rickelman, 441 F.2d 444 (6th Cir. 1971). *Contra,* Karr v. Schmidt, 460 F.2d 609 (5th Cir. 1972) (8–7 decision, en banc); King v. Saddleback Junior College District, 445 F.2d 932 (9th Cir.), cert. denied, 404 U. S. 979, 92 S.Ct. 342, 30 L.Ed.2d 294 (1971). *See generally,* 84 Harv.L.Rev. 1702 (1971); 55 Iowa L.Rev. 707 (1970).

The right in question is the right to wear one's hair at any length or in any desired manner; it is an ingredient of personal freedom protected by the United States Constitution. Crews v. Cloncs, *supra; accord,* Breen v. Kahl, *supra.* Phrased differently, the Constitution establishes a sphere of personal liberty for every individual and within the commodious concept of liberty, embracing freedoms great and small, is the right to wear one's hair as he wishes. Richards v. Thurston, *supra; accord,* Bishop v. Colaw, *supra.* The source of the right is less clearly established. The First and Eighth Circuits have held that this right is found in the liberty concept of the due process clause, while the Seventh Circuit has relied upon the "premise that the Constitution contemplates protection for " ' "additional fundamental right[s] . . . which exist alongside those fundamental rights specifically mentioned in the first eight amendments," ' " Crews v. Cloncs, *supra,* 432 F.2d at 1263, *i. e.,* within the pe-

---

9. Defendants still have discretion to determine whether a reservist does present a neat and soldierly appearance and in that regard it is expected the Army will promulgate regulations governing the wearing of a wig, *e. g.* the wigs may not be easily detectable, and they must match the wearer's natural hair color. Friedman v. Froehlke, Civil No. 71–1905–G (D.Mass. Jan. 31, 1972).

numbra of the first eight amendments and within the ninth amendment.[10]

While I am more persuaded by the rationale of the First and Eighth Circuits,[11] I think it nevertheless clear that the freedom to govern one's appearance does exist and is protected by the due process clauses of the fifth and fourteenth amendments.[12] There is also a divergence of opinion on the showing

10. Plaintiff has also made the argument that his wearing of long hair is a form of expression protected by the first amendment. None of the courts which have recognized the constitutionally protected right to wear one's hair in any manner he chooses has found it protected by the first amendment. *E. g.*, Bishop v. Colaw, 450 F.2d 1069, 1074 (8th Cir. 1971); Richards v. Thurston, 424 F. 2d 1281, 1283 (1st Cir. 1970). The Court in Bishop v. Colaw nevertheless did state that such protection might be available if there were evidence that the hairstyle in question did constitute symbolic expression. *See also* 84 Harv.L.Rev. 1702. 1707–1710. While thus under certain circumstances one's hairstyle might be entitled to first amendment protection, this Court has no evidence one way or the other on whether plaintiff's hairstyle is symbolic expression and any judgment granted pursuant to plaintiff's motion for summary judgment cannot be based upon first amendment considerations.

11. The First Circuit in Richards v. Thurston, 424 F.2d 1281, 1284–1285 (1st Cir. 1970) expressed the nature of the right as follows:

"[W]e believe that the Due Process Clause . . . establishes a sphere of personal liberty for every individual, subject to reasonable intrusions by the state in furtherance of legitimate state interests.

"The idea that there are substantive rights protected by the 'liberty' assurance of the Due Process Clause is almost too well established to require discussion. Many of the cases have involved rights expressly guaranteed by one or more of the first eight Amendments. But it is clear that the enumeration of certain rights in the Bill of Rights has not been construed by the [Supreme] Court to preclude the existence of other substantive rights implicit in the 'liberty' assurance of the Due Process Clause. * * *

"We do not say that the governance of the length and style of one's hair is necessarily so fundamental as those substantive rights already found implicit in the 'liberty' assurance of the Due Process Clause, requiring a 'compelling' showing by the state before it may be impaired. Yet 'liberty' seems to us an incomplete protection if it encompasses only the right to do momentous acts, leaving the state free to interfere with those personal aspects of our lives which have no direct bearing on the ability of others to enjoy their liberty. As the court stated in Union Pacific Railway Co. v. Botsford, 141 U.S. 250, 251, 11 S.Ct. 1000, 35 L.Ed. 734 (1891):

'No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. As well said by Judge Cooley, "The right to one's person may be said to be a right of complete immunity: to be let alone." '

"Indeed, a narrower view of liberty in a free society might, among other things, allow a state to require a conventional coiffure of all its citizens, a governmental power not unknown in European history.

"We think the Founding Fathers understood themselves to have limited the government's power to intrude into this sphere of personal liberty, by reserving some powers to the people. * * * We conclude that within the commodious concept of liberty, embracing freedoms great and small, is the right to wear one's hair as he wishes." (Citations and footnotes omitted.)

12. Defendants have argued that assuming such a right exists, it is clearly limited to school children and does not extend to reservists. While reservists and school children may under some circumstances stand on a different constitutional footing, *see* Raderman v. Kaine, 411 F.2d 1102, 1104 (2d Cir. 1969), cert. denied, 396 U.S. 976, 90 S.Ct. 467, 24 L.Ed. 2d 447 (1969); Krill v. Bauer, 314 F. Supp. 965, 966–967 (E.D.Wisc.1970), reservists nevertheless, possess the right, it is constitutionally protected and defendants bear the burden of justifying an infringement. Anderson v. Laird, 437 F. 2d 912, 916 (7th Cir. 1971) (Reynolds, D. J. concurring in part, dissenting in part); Friedman v. Froehlke, Civil No. 71–1905–G (D.Mass. Jan. 31, 1972). Moreover, the military has no right to *unnecessarily* interfere with the rights

the government must make before it can infringe upon that right. The Seventh Circuit requires a substantial burden of justification for an infringement, while the First Circuit requires merely that the government bear the burden of demonstrating a legitimate governmental interest requiring the restriction. Richards v. Thurston, *supra*, 424 F.2d at 1284. Yet, since the defendants have satisfied neither test, as has been demonstrated *supra*, this Court need not determine the proper test for justifying a restriction.

Plaintiff recognizes that the right to govern one's appearance is not absolute. *See* Breen v. Kahl, *supra*, 419 F.2d at 1036; Richards v. Thurston, *supra*, 424 F.2d at 1284. In fact the Court of Appeals for the Second Circuit has held that being in the Army does curtail or suspend certain constitutional rights, Raderman v. Kaine, *supra*, 411 F.2d at 1104, and plaintiff recognizes the interest of the Army in requiring reservists to appear at drill meetings in a neat and soldierly manner. Nevertheless, the defendants have not sufficiently justified the regulation requiring, in effect, that plaintiff cut his hair, in light of the following undisputed facts: plaintiff appears neat and soldierly in a short-hair wig; he is capable of performing his duties in such a wig; other men are permitted to satisfy the appearance requirement in a short-hair wig; plaintiff spends only approximately 3% of his time in the Army; and *no* legitimate interest of the Army is furthered by a requirement that plaintiff cut his hair rather than wear a short-hair wig to weekend meetings. Even if it assumed that because of the governmental interest in raising an Army any interest of the Army in requiring plaintiff to cut his hair must be given proportionately greater weight than a similar interest of other governmental agencies, *see* Antonuk v. United States, 445 F.2d 592, 594 (6th Cir. 1971); United States ex rel. Schonbrun, *supra*, 403 F.2d at 374–375, the defendants have offered no legitimate interest for the regulation. Furthermore, assuming the defendants were able to demonstrate an interest of the Army that is furthered by the regulation, they have not indicated why that interest cannot be protected by a narrower regulation allowing plaintiff to wear a short-hair wig, and it is clear that defendants must act in a manner that is least restrictive of plaintiff's constitutional rights. *See* Shapiro v. Thompson, 394 U.S. 618, 637, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); NAACP. v. Alabama ex rel. Flowers, 377 U.S. 288, 307–308, 84 S.Ct. 1302, 12 L. Ed.2d 325 (1964); Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed. 2d 231 (1960).

As the Supreme Court noted in United States v. O'Brien:

> "[W]e think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers . . . [a legitimate] interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged . . . freedoms is no greater than is essential to the furtherance of that interest." 391 U.S. at 377, 88 S.Ct. at 1679.

Since defendants have failed to sufficiently demonstrate that the regulation furthers a legitimate Army interest and that it does not unnecessarily infringe upon plaintiff's constitutionally protected right to wear his hair in any manner he chooses, the regulation is invalid.

---

of citizens whether they are in the military or not. *Cf.* Kennedy v. Commandant, 377 F.2d 339, 342–343 (10th Cir. 1967); United States v. Miller, 261 F.Supp. 442, 449 (D.Del.1966). *See* Warren, The Bill of Rights and the Military, 37 N.Y.U.L.Rev. 181, 188 (1961).

The defendants have not satisfied this test. No legitimate interest is furthered; the statement of Colonel Wheeler indicates that the regulation is not entirely unrelated to the exercise of the right in the civilian world; and the restriction on plaintiff's exercise of his right, which is hardly incidental, is much greater than is essential for the furtherance of any interest of the Army that has been made known to the Court. Therefore, the regulation unnecessarily infringes upon plaintiff's constitutionally protected right to wear his hair in any manner he chooses and is invalid.

As indicated earlier in this opinion, plaintiff has moved for summary judgment, and defendants have raised only one fact issue in opposition, i. e. whether plaintiff was expelled from a reserve meeting *solely* because he wore a short-hair wig. There is sufficient doubt concerning the reason plaintiff was expelled from the reserve meeting and as to the amount of back pay lost to preclude summary judgment on ¶¶ 4 and 5 of the "wherefore" clause of his amended complaint.[13] Plaintiff is still, however, entitled to partial summary judgment on ¶¶ 1, 2 and 3.

Accordingly, and for the foregoing reasons, defendants' motion to dismiss the complaint is denied and plaintiff's motion for summary judgment is granted in part and denied in part as indicated.[14]

Settle order on notice.

13. With regard to plaintiff's requests in ¶¶ 6 and 7 of the "wherefore" clause, defendants still maintain certain discretion in determining whether plaintiff *cum* wig presents a neat and soldierly appearance. It is conceivable that one's hair could become so long and unruly that even a short-hair wig could not cover it completely and thus prevent the reservist from presenting a neat and soldierly appearance. The Court cannot be asked to regulate the day to day activities of the reserve meetings, but as long as the reservist in his short-hair wig presents a neat and soldier- ly appearance and can perform all the duties required of him, the Army has no authority to order his hair cut, absent a showing of need. As far as adjusting the wig is concerned, it is expected the Army will follow whatever their previous practice has been with bald and disfigured men whose wigs needed a slight adjustment.

14. It is to be made clear that this Court's rulings do turn on the fact plaintiff is a reservist, and they do not extend to full-time soldiers.