Raymond C. HOERSCH, Plaintiff,

v.

Honorable Robert F. FROEHLKE,
Secretary of the Army,
Defendant.

Civ. A. No. 72–1759.

United States District Court,
E. D. Pennsylvania.

Oct. 11, 1974.

Orlow & Orlow, by James J. Orlow, Philadelphia, Pa., for plaintiff.

Robert E. J. Curran, U. S. Atty., by Michael B. Hepps, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## OPINION AND ORDER

HANNUM, District Judge.

This is a declaratory judgment action in which petitioner seeks to have orders to involuntary active duty in the United States Army Reserves declared null and void, and further requests this Court rule that he is a civilian, and no longer subject to military jurisdiction.

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331,[1] and 28 U.S.C. § 2201.[2]

### FACTS

On October 17, 1965, plaintiff, Raymond C. Hoersch, Jr., voluntarily enlisted in the United States Army National Guard of Pennsylvania.[3] Upon completion of his basic training, plaintiff was placed in a unit of the Ready Reserve to fulfill the remainder of his military obligation. Because of unexcused absences[4] from scheduled training with his Ready Reserve Unit, plaintiff was ordered to active duty. Following an unsuccessful military appeal, he brought this declara-

---

1. The district court shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

2. In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

3. The enlistment agreement signed by plaintiff provided in part:
"In connection with my enlistment in the Army National Guard of the State of Pennsylvania and as a Reserve of the Army for service in the Army National Guard of the United States, this date. I hereby agree to and understand that . . . I incur a mil-

itary service obligation of 6 years—after completing the active duty for training, I will serve in the Ready Reserve for the remainder of my 6 year military service obligation . . . I further understand that if in any year I fail to perform satisfactorily any of the requirements set forth above, I can be ordered to perform active duty . . ."

4. The eight unexcused absences occurred on: January 10, 1970, periods 1 and 2; January 11, 1970, periods 1 and 2; February 7, 1970, periods 1 and 2; February 8, 1970, periods 1 and 2; Plaintiff was also absent on December 13, 1969, periods 1 and 2. This absence was allegedly due to illness. Although plaintiff telephoned the unit commander and reported his illness, he failed to later substantiate this illness as required by AR 135–91(9)(a). But the absences on this date were not considered in plaintiff's activation order. The total of unexcused absences would then be 10, but the orders to involuntary active duty were based only on the eight set out above.

tory judgment action challenging the validity of his orders to active duty.

10 U.S.C. § 673a(a) [5] confers authority on the President to order to active duty any member of the Ready Reserve [6] of an armed force who is not "participating satisfactorily" in a unit of the Ready Reserve. By Executive Order No. 11366,[7] the President delegated his authority to the Secretary of Defense, together with authority to delegate this power in turn to any of the secretaries of the military departments of the Department of Defense. Criteria for satisfactory participation are set out in Army Regulations 135–91(12),[8] and 135–91(5)(d).[9]

Hoersch received his first unexcused absences for periods 1 and 2 on January 10, 1970, and periods 3 and 4 on January 11, 1970. On February 2, 1970, Hoersch was informed of these unexcused absences [10] by certified mail from his unit commander.[11]

On February 7, 1970, plaintiff presented himself for his scheduled unit assembly, and was informed that his appearance did not meet military standards; specifically, his uniform was neither cleaned nor pressed, his boots were dirty, and his hair was too long.[12] The unit commander gave Hoersch permission to leave the assembly, and he was informed further that, upon return with his appearance in conformity with military standards, he would be given credit for the morning period. Hoersch failed to return, in fact he was absent from periods 3 and 4 on February 8, 1970.

On February 25, 1970, plaintiff was informed by certified mail for which he properly receipted,[13] that he had accrued a total of eight unexcused absences within a one year period. The letter again stated that five unexcused absences within a one year period would result in a request to the Adjutant General of Pennsylvania for orders to active duty.

5. 10 U.S.C. § 673a(a) provides in relevant part:
(a) Notwithstanding any other provision of law, the President may *order to active duty any member of the Ready Reserve of an armed force who—*
(1) is not assigned to, or participating satisfactorily in, a unit of the Ready Reserve;

6. 10 U.S.C. § 269(b) provides:
The units and members of the Army National Guard of the United States and of the Air National Guard of the United States are in the Ready Reserve of the Army and the Ready Reserve of the Air Force, respectively.

7. Executive Order 11366, 32 C.F.R. 11411 (August 4, 1967)

8. "A member fails to participate satisfactorily when he accrues in any 1 year period a total of five or more unexcused absences from scheduled unit training assemblies . . ."

9. AR 135–91(5)(d):
"Satisfactory participation is defined as follows:
"Satisfactory participation is defined as follows:
(1) * * *
(2) *Attendance at all scheduled unit training assemblies as a member of a paid drill unit*

of the Army National Guard of Army Reserve, *unless excused by proper authority as provided herein. A member present at a scheduled unit training assembly will not receive credit for attendance thereat unless he is in the prescribed uniform, presents a neat and soldierly appearance, and performs his assigned duties in a satisfactory manner as determined by the unit commander.* When a member attends a unit training assembly and does not receive credit therefor, he will be *charged* with an unexcused absence and the unit commander will follow the same procedures applicable when a member fails to attend a unit training assembly. (Emphasis supplied).

10. See n. 4, supra.

11. Exhibit "B" Memorandum in Support of Defendant's Motion to Dismiss the Complaint or in the Alternative for Summary Judgment. [hereinafter Defendant's Memorandum.]

12. Id. Notations of unit commander at time of personal notification. Notations were made on unit commander's copy of letter dated February 2, 1970, although the notations were made on February 7, 1970.

13. Defendant's Memorandum, Exhibit "C".

March 3, 1970, orders were requested requiring Hoersch to enter active duty; and on April 20, 1970,[14] Hoersch was notified of the pending orders to involuntary active duty because of his eight unexcused absences. On April 30, 1970, plaintiff received a registered letter informing him further of his right to submit a written appeal of his involuntary activation.[15]

Plaintiff appealed to the unit commander on May 16, 1970, and his reporting date was changed from June 19, 1970, to July 19, 1970, to allow time for proper consideration of the appeal.[16]

Forty copies of plaintiff's original orders and his amended orders, changing his reporting date, were sent to plaintiff through the United States mail, but were returned unclaimed. [These facts are discussed more fully in the notice section].

On July 22, 1970, Hoersch received by registered mail his Discharge Certificate [17] from the Pennsylvania Army National Guard, as well as a copy of his special orders.[18] The special orders stated, *inter alia*, the reason for discharge, "Order to AD (Active Duty) as Army Reservist," and reflected the date upon which he was taken off the rolls of the Pennsylvania Army National Guard.

Plaintiff never reported for active duty.

Plaintiff's wife was informed by letter of July 29, 1970, that her husband was absent without leave (AWOL) from Fort Dix, New Jersey, since July 19, 1970. She was requested to advise her husband to report immediately to the nearest military installation.[19]

April 5, 1972, plaintiff returned to Military Control at Fort Dix, New Jersey, only to go AWOL the next day.[20]

■■ On May 10, 1974, in compliance with an Order of this Court, plaintiff surrendered to the United States Marshal, and was released on $500.00 bond pending a ruling on the merits of his cause of action.[21]

14. Defendant's Memorandum, Exhibit "E".

15. Defendant's Memorandum, Exhibit "F".

16. Defendant's Memorandum, Exhibit "J".

17. Defendant's Memorandum, Exhibit "M".

18. Defendant's Memorandum, Exhibit "N".

19. Defendant's Memorandum, Exhibit "P".

20. Defendant's Memorandum, P. 4.

21. Purely discretionary decisions of military officials within their valid jurisdiction are beyond the permissible scope of judicial review. Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953).
"[J]udges are not given the task of running the Army . . . Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters . . . we have found no case where this Court has assumed to revise duty orders as to one lawfully in the service." at 93–94, 73 S.Ct. at 540.
This rule has been in the Third Circuit and elsewhere. O'Mara v. Zebrowski, 447 F.2d 1085 (3d. Cir. 1971); Byrne v. Resor, 412 F.2d 774 (3d Cir. 1969); Brown v. McNamara, 387 F.2d 150 (3d Cir. 1967); Schonbrun v. Commanding Officer, 403 F.2d

371 (2d Cir. 1968), cert. denied 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460 (1969); Raderman v. Kaine, 411 F.2d 1102 (2d Cir. 1969); Doyle v. Koelbl, 434 F.2d 1014 (5th Cir. 1970); Anderson v. Laird, 437 F.2d 912 (7th Cir. 1971); Agrati v. Laird, 440 F.2d 683 (9th Cir. 1971); Ansted v. Resor, 437 F.2d 1020 (7th Cir. 1971).
However this rule of judicial non-interference in military affairs is not absolute. The courts can review military orders and other actions in limited circumstances:
1. To determine whether those orders were promulgated "in violation of the military's own regulations," O'Mara v. Zebrowski, 447 F.2d 1085 (3d Cir. 1971). See also Bluth v. Laird, 435 F.2d 1065 (4th Cir. 1970); Smith v. Resor, 406 F.2d 141 (2d Cir. 1969); cf. United States v. Gazda, 499 F.2d 161 (3d Cir. 1974).
2. To determine whether the procedures employed by the military comport with the requirements of procedural due process. O'Mara v. Zebrowski, supra, 447 F.2d at 1088, Brown v. McNamara, 387 F.2d 150, 152 (3d Cir. 1967).
3. To determine whether or not the military has acted within the jurisdiction conferred on it by valid law. Caruso v. Toothaker, 331 F.Supp. 294 (M.D.Pa.1971), Winters v. United States, 281 F.Supp. 289 (EDNY 1968), aff'd 390 F.2d 879 (2d Cir. 1968).

## DISCUSSION

### A. Constitutionality

Plaintiff's first argument is that membership in the National Guard cannot automatically make one a member of the Ready Reserve of the Army without violating the Constitution, specifically Article I, § 8, cls. 15, 16.[22] Plaintiff views the National Guard as a state controlled unit and the only constitutionally valid power of the federal government over the National Guard is to activate entire units "to execute the Laws of the Union, suppress Insurrections and repel Invasions," and not to activate individuals.

The sole support cited by plaintiff for this position is lengthy dicta from an opinion of Justice Harlan in Maryland v. United States, 381 U.S. 41, 85 S.Ct. 1293, 14 L.Ed.2d 205 (1965) vacated on other grounds 382 U.S. 159, 86 S.Ct. 305, 15 L.Ed.2d 227 (1966). The Court held that for purposes of the Federal Tort Claims Act civilian employees as well as military employees of the National Guard are to be treated as employees of the state and not of the federal government. This is inapposite to the case at bar.

■■ A presumption of constitutionality attaches to duly enacted legislation.

United States v. Thompson, 147 U.S. App.D.C. 1, 452 F.2d 1333 (1971), cert. denied 405 U.S. 998, 92 S.Ct. 1251, 31 L. Ed.2d 467 (1972).[23] The burden of establishing the unconstitutionality of 10 U.S.C. 269(b) is upon the party attacking it, namely Hoersch. Metropolitan Casualty Insurance Co. v. Brownell, 294 U.S. 580, 55 S.Ct. 538, 79 L.Ed. 1070 (1935).[24] The burden facing Hoersch in his challenge to the statute in question is a heavy one. United States v. Turner, 337 F.Supp. 1045 (D.D.C.1972), aff'd 475 F.2d 419 (D.C.Cir.1973),[25] District of Columbia National Bank v. District of Columbia, 121 U.S.App.D.C. 196, 348 F.2d 808 (1965).[26] The Court concludes that plaintiff has not met this burden.

■ "The power of the President and his authorized representatives to call individual reservists and reserve units . . . has been uniformly and liberally construed." Dix v. Rollins, 413 F. 2d 711 (8th Cir. 1969). See also: Adams v. Clifford, 294 F.Supp. 1318 (D. Hawaii 1969); Schultz v. Clifford, 303 F.Supp. 965 (D.Minn.1969), aff'd 417 F.2d 775 (8th Cir. 1969), cert. denied 397 U.S. 1007, 90 S.Ct. 1234, 25 L.Ed.2d 420 (1969); Fox v. Brown, 286 F.Supp. 855 (SDNY 1969), aff'd 402 F.2d 837 (2d Cir. 1968), cert. denied 394 U.S. 938, 89 S.Ct. 1219, 22 L.Ed.2d 471

The Court finds plaintiff's orders to involuntary active duty in the instant case were promulgated pursuant to military regulations, complied with procedural due process, and were clearly within valid military jurisdiction.

22. Article I, § 8 cl. 15. Congress shall have the power to . . . provide for calling forth the Militia to execute the Laws of the Union, suppress Insurrections and repel Invasions;

cl. 16. To provide for organizing, arming, and disciplining, the Militia, and for governing such Part of them as may be employed in the Service of the United States, reserving to the States respectively, the Appointment of the Officers, and the Authority of training the Militia according to the discipline prescribed by Congress;

23. The Court in Thompson held post conviction bail provisions of the District of Columbia Court Reform Act apply to persons convicted of purely local offenses and do not operate to deny bail to those convicted in District of Columbia under federal criminal statutes of nationwide scope.

24. The Court in Metropolitan Casualty upheld a State regulatory Statute which distinguished between domestic and foreign casualty insurance companies. The Court found that differences in the security and collection of claims against the two groups may have justified differential treatment.

25. The Court in Turner upheld the constitutionality of the Narcotic Rehabilitation Act, which excluded from its benefits those charged with or convicted of a crime of violence.

26. The Court in District of Columbia National Bank upheld the constitutionality of a statute imposing a gross earnings tax on a bank doing business in the District of Columbia.

(1969); Winters v. United States, 281 F.Supp. 289 (EDNY 1968) aff'd 390 F.2d 879 (2d Cir. 1968); Morse v. Boswell, 289 F.Supp. 812, aff'd 401 F.2d 544 (4th Cir. 1968), cert. denied 393 U.S. 1052, 89 S.Ct. 687, 21 L.Ed.2d 694 (1969).[27]

## B. Notice

Plaintiff next argues he never actually received his orders to active duty, and therefore was not bound by them.

On May 6, 1970, plaintiff's attorney noted in a postscript to a letter sent to the unit commander of plaintiff's unit that plaintiff's address was changed, and gave the new address. However, plaintiff's orders to active duty were sent to his earlier address and were returned unclaimed.

Plaintiff does not complain that he never received his discharge certificate which was sent to a third address, neither the address noted in the letter from plaintiff's attorney, nor the earlier address to which the active duty orders were sent. Along with the discharge certificate sent to this third address and received by plaintiff, was a copy of plaintiff's special orders. The special orders indicate, *inter alia*, the reason for discharge, the effective date of discharge, as well as the term of plaintiff's military obligation. This, combined with the earlier correspondence in which plaintiff was apprised of the entire situation regarding his involuntary activation, his appeal of these orders, subsequent denial of the appeal, put the plaintiff on notice that orders to active duty existed.

■ Between March and July 1970, the record before this court indicates no less than five addresses for plaintiff. Plaintiff can not be allowed to pick and choose what mail he accepts and refuses at each address, and then claim no notice of mail he refused.

Army Regulations 310–1, subparagraph 14b provides:

"An order which is individual in its operation becomes effective only if the person concerned has *actual or constructive knowledge of its existence.*" (emphasis supplied)

The regulation does not require constructive knowledge of the contents of the order, only its existence. Hoersch clearly had both constructive and actual knowledge of the existence of his orders to active duty.

The cases cited by plaintiff offer no support for his position that he received no notice of his activation. United States v. Dolan, 42 C.M.R. 893 (1970) reversed a conviction of unauthorized absence because the appellant did not receive his orders to active duty and consequently never reported. Dolan was in Denmark and never received notice of his discharge from the National Guard, and never received any other orders. Hoersch received his discharge, as well as a copy of his special orders, and in fact, exchanged correspondence with military authorities challenging his activation.

27. The Armed Forces Reserve Act of 1952 [Pub.L. 476, July 9, 1952, 66 Stat. 481] was enacted "for the purpose of providing trained units and qualified individuals to be available for active duty in the Armed Forces of the United States. . . ." [66 Stat. at 482]. The Army National Guard was made part of that reserve force, and the members of the National Guard were made members of the Ready Reserve of the Army. 10 U.S.C. 269(b). This insured that the training of the National Guard is consistent throughout all the States, and would produce a fighting force readily assimilated into the Army in case of activation.

The control of the National Guard remained with the Governors of each State; the Governors generally delegated this authority to an adjutant general in each State. Army Regulations require the unit commander request orders to involuntary active duty from the adjutant general. The record before the court indicates this procedure was followed in the case before the bar.

United States v. Moore, 44 C.M.R. 496 (1971) is readily distinguishable from the case at bar. In *Moore, supra,* the court held the appellant could not be guilty of absence without leave since he was not lawfully ordered to active duty. One significant distinction between the case at bar and *Moore, supra,* is a stipulation that Moore had no knowledge of the order requiring him to report for active duty.

The court held:

> "In the face of such a stipulation [that appellant had no knowledge of the order], it would be fruitless to discuss the possibility that the other evidence in the case might warrant an inference that appellant had knowledge of the order." at 497.

Therefore, while the plaintiff is correct in stating that he never actually received his orders to active duty, neither Army Regulations, case law, nor the facts show he had less than actual or constructive notice of their existence.

## C. Due Process

Plaintiff finally contends "There is substantial authority for the proposition that Mr. Hoersch had the constitutional right to wear long hair to his drills." [28] In support of this proposition plaintiff cites the court to Harris v. Kaine, 352 F.Supp. 769 (SDNY 1972). The court in *Harris* held that Army Regulation 600–20(31), which proscribed a reservist from wearing a short hair wig at reserve meetings, was unconstitutional. In the court's opinion Judge Tenney was careful to state the unit commander still retained the discretion to determine whether the wig presented a neat and soldierly appearance. "The court cannot be asked to regulate the day to day activities of the reserve meetings, but as long as the reservist in his short-hair wig presents a neat and soldierly appearance and can perform all the duties required of him, the Army has no authority to order his hair cut, absent a showing of need." [29] This adherence to the least restrictive alternative of constitutional rights is inapposite here, unless it is taken as a suggestion to plaintiff as to how to comply with the hair regulations and still keep his hair long. In *Harris,* the court conceded it "had no jurisdiction to determine whether the appearance standards of the Army are arbitrary or an abuse of discretion .. . . . defendants [the Army] conceded that plaintiff in his wig satisfies those standards and can perform all duties required of him." [30]

Plaintiff also cites the court to Raderman v. Kaine, 411 F.2d 1102 (2d Cir. 1969). That case affirmed a dismissal by the district court of a reservist's efforts to enjoin his orders to active duty for failure to present a neat and soldierly appearance, specifically his hair was too long.

> "Certainly what constitutes a neat and soldierly appearance for a reservist within such regulations is within the discretion of the military . . . In the present case there is clearly no action by the military which goes far beyond any rational exercise of discretion." 411 F.2d at 1106

The holding in *Raderman* is directly contrary to the relief sought by plaintiff.

■ Additionally, under the rubric of due process, plaintiff alleges the National Guard failed to consider his request to wear long hair as required for his employment as a motion picture producer. The Army's Weekly Bulletin # 42,[31]

28. Plaintiff's *Memorandum* of *Points and Authority,* P. 10

29. Harris v. Kaine, 352 F.Supp. 769 (SDNY 1972), n. 13 at 778.

30. Id., at 775.

31. Smith v. Resor, 406 F.2d 141, 143–144 (2nd Cir. 1969) n. 2.

**1242**

dated October 20, 1967, provided additional guidelines for unit commanders in making determinations of what constitutes proper military appearance. However, the discretion of the unit commander still controls the individual's appearance, and even if the reservist can prove his long hair, beard, or moustache "do contribute to [his] civilian livelihood," the unit commander has the right to insist that they be maintained in a neat manner. The Bulletin clearly does not give every reservist the permission to show up for scheduled unit assemblies in whatever state he pleases; the final determination of appearance is up to the unit commander, and his discretionary decision has been steadfastly held irreviewable by the Courts. O'Mara v. Zebrowski, *supra,* Smith v. Resor, *supra,* Schonbrun v. Commanding Officer, *supra,* Fox v. Brown, *supra,* Winters v. United States, *supra.*

■ The record discloses the first written request by plaintiff for permission to wear his hair long was made on March 6, 1970, which was after plaintiff was advised that his unit commander requested orders to involuntary active duty for plaintiff's failure to participate satisfactorily in his unit. Aware of the full significance of five or more unexcused absences within a year, and compelled by his employment to have a hair style in conflict with military standards, plaintiff's request seems untimely. In any case, there is no indication from the record before the Court that this request was not considered by the unit commander or the Delay Appeal Board since the letter was required to be made part of plaintiff's permanent 201 file.

For reasons discussed herein, this Court finds the plaintiff was properly ordered to involuntary active duty, and that he is subject to military control. Therefore, plaintiff's petition for declaratory judgment is denied. The above shall constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of Federal Rules of Civil Procedure, 28 U.S.C.