**UNITED STATES of America ex rel. Carl Peter NIEMANN**

v.

**Thomas U. GREER, Commanding General Fort Dix, New Jersey, et al.**

**Civ. A. No. 74–670.**

United States District Court,
D. New Jersey.

Jan. 17, 1975.

Rudolph Socey, Jr., Trenton, N. J., Harold M. Weiner, New York City, for petitioner.

Richard W. Hill, Asst. U. S. Atty., Trenton, N. J., for respondent.

## OPINION

BARLOW, District Judge.

This is an application for a writ of habeas corpus brought by the petitioner, Carl Peter Niemann, pursuant to 28 U.S.C. § 2241. Petitioner, a former United States Army Reservist, claims to have been improperly ordered to active duty due to his failure to satisfactorily participate in scheduled Army Reserve drills. Specifically, the petitioner alleges that he received no notice of his involuntary activation or of his right to appeal that activation. Having carefully reviewed the pleadings, the documentary evidence presented, and having heard the petitioner's testimony, the Court is convinced that the application for a writ of habeas corpus must be denied.

The Court's scope of review in matters such as this is limited to determining whether or not the military has complied with its regulations in ordering the petitioner to active duty. Discretionary administrative decisions of military authorities consistent with the procedures mandated by military regulations are not subject to review. O'Mara v. Zebrowski, 447 F.2d 1085, 1087 (3rd Cir. 1971).

Paragraph 12 of Army Regulation No. 135–91 provides that a Reserve member has failed to participate satisfactorily when he accrues five or more unexcused absences from scheduled unit training assemblies in any one-year period. Paragraph 12a of the same regulation further provides, consistent with the provisions of 10 U.S.C. § 673a, that any Reserve member who fails to participate satisfactorily in this regard may be ordered to active duty. Prior to requesting active duty orders, the Reserve member's unit commander is required to "determine if any cogent or emergency reasons existed which prevented the member from attending". Army Regulation No. 135–91, para. 12e(2). If no such reasons are present, the unit commander may request that the member be ordered to active duty. The concerned member must be immediately notified of any request for active duty orders and must be informed that he will be required to enter active duty in approximately thirty (30) days. Army Regulation No. 135–91, para. 12e(2). Prior to the actual issuance of active duty orders, Reserve members must also be notified of their right to appeal their involuntary activation within fifteen (15) days of the

receipt of the right-to-appeal letter. Army Regulation No. 135–91, para. 14g.-1. And, finally, once active duty orders are issued, para. 14h(3) of Army Regulation No. 135–91 requires that a copy of the orders be forwarded to the concerned member by certified mail, return receipt requested.

In this case, the petitioner enlisted in the Army Reserve on November 26th, 1968. His unit of assignment was the 320th General Hospital, 529 W. 42nd Street, New York, New York. On the date of his enlistment, the petitioner executed the Orientation Statement of Reserve Agreement Understanding (Form 838), which provides, *inter alia:*

> "I understand that I will be ordered to active duty for a period which, when added to my prior service on active duty, active duty for training, annual field training or full time training duty, will total twenty-four (24) months if I fail to attend Annual Active Duty for Training or if I fail to participate satisfactorily by accruing in any one-year period a total of five or more unexcused absences from scheduled unit training assemblies. If I fail to attend a scheduled single unit training assembly (UTA) without proper authority I will be charged with one unexcused absence. If I fail to attend a multiple unit training assembly (MUTA) without proper authority, I will be charged with one unexcused absence for each UTA equivalent not attended. The maximum number of absences chargeable for failure to attend consecutive MUTA assemblies will be 4 unexcused absences."

It is uncontroverted that during the period from April 26th, 1972, to March 14th, 1973, the petitioner failed to attend substantially in excess of five unit training assemblies. (Tr. 14) In fact, the actual number of unexcused absences was approximately twenty-six (26).

In a letter dated March 28th, 1973, the petitioner was notified, presumably by regular mail, of his Reserve unit's intention to request that he be ordered to active duty in light of his accumulated unexcused absences. A formal request for active duty orders, dated March 31st, 1973, was then prepared and forwarded to the First Army. On April 25th, 1973, the First Army forwarded correspondence to the petitioner notifying him that active duty orders would be issued in approximately thirty (30) days, and that he had fifteen (15) days from the date of receipt of this notice to appeal his activation. This letter was mailed by certified mail and was returned to the First Army Headquarters marked "notified" and "unclaimed". Thereafter, on May 9th, 1973, petitioner was ordered to active duty. A copy of these orders sent to the petitioner by certified mail, was returned to the First Army marked "unclaimed". As previously stated, petitioner now alleges that his activation was improper in light of the military's failure to afford him proper notice of his activation and of his right to appeal, wherein he might have asserted certain meritorious defenses.

The Court is satisfied that in so ordering the petitioner to active duty the military authorities complied with the provisions of the applicable regulations. We note, in this regard, para. 14*l* of Army Regulation No. 135–91, which directs itself specifically to the proper notification of Reserve members ordered to active duty. It provides, in pertinent part, as follows:

> "Notification of order to active duty has been fully and sufficiently accomplished by the mailing of orders addressed to the member concerned at the mailing address which records of the activity mailing the orders indicate as the most recent one furnished by the member as an address from which official mail will be received by or forwarded to him. Absence of indication of delivery, or return as undeliverable, of orders addressed as above does not change the fact that the member has been properly ordered to report for active duty."

On its face this regulation would appear to establish that this petitioner may be considered to have had at least constructive notice of his activation orders. No allegation is made that this regulation is constitutionally defective or inconsistent with concepts of due process. Furthermore, the history of the relationship between the petitioner and his Reserve unit strongly suggests that he had systematically failed to claim any certified mail forwarded to him by military authorities.

Following each absence incurred by the petitioner between April 26th, 1972, and March 14th, 1973, a letter was mailed to the petitioner's home of record, noting his absence and advising him of the consequences of accruing five or more unexcused absences.[1] All but two of these letters were sent by certified mail. Of the twenty letters sent by certified mail, only two were accepted under the petitioner's signature (Exhibit P–3, letters dated May 10, 1972, and December 6, 1972) and one was accepted by his father (Exhibit P–3, letter dated December 17, 1972). There exists no signed receipt for two other certified letters (Exhibit P–3, letters dated March 7, 1973, and March 14, 1973), although there is also no return of these letters to indicate their nondelivery. The remaining fifteen letters were all returned with the postal notation that the addressee had been "notified" but that the letters had remained "unclaimed".

It would not appear that the nondelivery of these certified letters was caused by the failure of the military to maintain an accurate record of the petitioner's home address. All of the certified letters which were returned marked "notified" and "unclaimed" were mailed either to the petitioner's proper current address or, possibly in several instances, to an address where he had recently resided and where his parents continued to live. Petitioner specifically stated that his parents would sign for and accept letters in such an instance (Tr. 20–22), which his father did on at least one occasion. (Exhibit P–3, letter dated December 6, 1972.)

It is not disputed that the notice of intention to request activation dated March 28, 1973, as well as the right-to-appeal letter dated April 25, 1973, and the active duty orders dated May 9, 1973, were all sent to the petitioner's then current home of record at 146 Caswell Avenue, Staten Island, New York.[2] His failure to claim those of the above letters sent by certified mail, coupled with the history of unclaimed letters recited above, satisfies this Court that the petitioner systematically and intentionally failed to claim correspondence directed to him by his Reserve unit. In such an instance, the petitioner may not subsequently complain of the absence of notice. In Myrick v. Evatt, Civil Action No. 6523 (E.D.Tenn., October 19, 1972), the Court was confronted with a National Guardsman who sought habeas corpus relief from his involuntary activation due to excessive absences. As in the present case, certified letters containing notice of the right to appeal and the activation orders had been returned by the postal service marked "notified" and "unclaimed". The Court held:

"With regard to the alleged lack of notice, the undisputed record reveals that the military properly addressed and posted certified mail to the peti-

---

1. In addition, on September 6th, 1972, the petitioner was counseled with regard to his unexcused absences accumulated as of that date. Following this counseling, the petitioner signed a document which stated:
"I have been counselled this date as to the unsatisfactory participation in my US Army Reserve assignment and obligation, I fully realze [sic] that I have not performed satisfactorily at scheduled assem-

blies. I further realize that any further unsatisfactory performance will result in my being processed for order to active duty."

2. At the very latest, the petitioner moved to 146 Caswell Avenue in December, 1972 (Tr. 21–22). He remained at that address until approximately June or July of 1973 (Tr. 23–24).

tioner with regard both to his fifth unexcused absence and with regard to his involuntary activation. That this mail was returned unclaimed by the petitioner after two notices were left at his address by the Postal Service does not affect the validity of the notice attempted to be given him. The proceedings followed by the military in this regard comply with the relevant Army Regulations. To allow one to avoid an activation order merely by failing to claim certified mail would defeat the purpose of the law."

█ Finally, any allegation that the petitioner's Reserve unit erroneously refused to accept valid excuses for his absences is not properly before the Court. Such determinations are vested within the sound discretion of the military authorities and are not reviewable here. Byrne v. Resor, 412 F.2d 774 (3rd Cir. 1969); Mickey v. Barclay, 328 F.Supp. 1108, 1111 (E.D.Pa.1971).

Accordingly, the application of the petitioner for a writ of habeas corpus is denied. An appropriate order will be submitted by counsel for the respondents.