Theodore J. ANDERSON, Appellant,

v.

UNITED STATES of America, and its Department of Army, National Guard of Minnesota, Commander of Fort Carson, Colorado, Commander of Fort Sheridan, Illinois, Appellees.

No. 82–2266.

United States Court of Appeals, Eighth Circuit.

Submitted May 19, 1983.

Decided Oct. 13, 1983.

Isaacs & Jorgenson, Ltd. by Donald R. Jorgenson, and Clark F. Isaacs, St. Paul, Minn., for appellant.

James M. Rosenbaum, U.S. Atty. by Mary E. Carlson, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before BRIGHT and McMILLIAN, Circuit Judges, and NICHOL,* Senior District Judge.

McMILLIAN, Circuit Judge.

Theodore J. Anderson appeals from an order of the District Court [1] for the District of Minnesota dismissing his action under the Federal Torts Claims Act (FTCA), 28 U.S.C. § 2674, against the United States.[2] The district court held that the action was barred by *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). For the reasons discussed below, we affirm.

On December 13, 1969, appellant enlisted in the Army National Guard of the State of Minnesota and in the Army Reserve with membership in the Army National Guard of the United States for a period of six years. Appellant's enlistment agreement provided that if he failed to attend the prescribed number of state national guard training sessions, the Army could order him to involuntary active duty. In March 1973, September 1974 and November 1974, appellant did not attend required training sessions.

---

* The Honorable Fred J. Nichol, United States Senior District Judge for the District of South Dakota, sitting by designation.

1. The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

2. The district court also dismissed appellant's claim against other defendants. Appellant does not challenge those rulings on appeal.

Each time he was warned in writing that further absences could result in involuntary active duty. In June 1975 appellant again did not attend an annual training session. By letter dated July 1, 1975, appellant was notified that he had been "certified for order to involuntary active duty with the U.S. Army by reason of unsatisfactory participation with the Minnesota Army National Guard [for being] AWOL [Absent Without Leave] from annual training, 1975." The letter was sent by certified mail, restricted delivery to named addressee, to appellant's last known address and forwarded to his current address. After the post office issued two notices of the attempted delivery, the letter was returned as unclaimed. By order dated November 10, 1975, appellant was ordered to active duty as of January 8, 1976. The order was also sent by certified mail, restricted delivery, and again returned as unclaimed after two notices of attempted delivery.

On January 7, 1976, appellant was discharged from the Minnesota National Guard and received a certificate of discharge. In boldface print the certificate stated that the discharge "*shall not be construed as relieving the individual named herein from his enlistment as a Reserve of the Army or from any reserve or service obligation to which he may be subject under the provisions of the Universal Military Training and Service Act as amended.*" (Emphasis supplied).

By letter dated January 20, 1976, appellant's wife was informed that appellant had been reported as AWOL and by letter dated February 16, 1976, was informed that he had been declared a deserter. Both letters requested her cooperation in "persuading [appellant] to return to military control."

On October 15, 1976, appellant was arrested by military police for being AWOL and detained in a county jail. He was later transferred to federal military facilities.

■ Thereafter appellant filed this FTCA action alleging that the United States government unlawfully caused his arrest and detention. The government moved to dismiss the complaint on the ground that the action was barred by the *Feres* doctrine. In *Feres* the Supreme Court held "that the Government is not liable under the Federal Torts Claims Act for injuries to servicemen where the injuries arise out of or in the course of activity incident to service." 340 U.S. at 146. The *Feres* doctrine is also applicable to members of the National Guard and the reserves. *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977); *United States v. Carroll,* 369 F.2d 618 (8th Cir.1966).

■ Appellant argued to the district court that *Feres* was inapplicable because the January 6, 1976, discharge from the Minnesota National Guard terminated his military obligations. The court disagreed, holding that the discharge certificate made clear that appellant's discharge from the state national guard did not terminate his federal military obligations under 10 U.S.C. § 673(a) and Army Regulation No. 135–91. The court held that at the time of appellant's AWOL arrest he was subject to military service and therefore the *Feres* doctrine barred the action. We agree. *Compare Valn v. United States,* 708 F.2d 116 (3d Cir.1983) (*Feres* doctrine does not bar FTCA action where plaintiff was ordered to involuntary active duty after he received a medical discharge from the Army).

At oral argument appellant's counsel did not challenge the district court's finding that the discharge did not terminate appellant's military obligation. Counsel conceded that *Feres* would bar the instant action but for the fact that the Army allegedly failed to follow its own procedures in notifying appellant of his activation orders. Counsel, however, did not cite to any regulations, but requested a remand to determine whether appellant received or had notice of the activation orders and whether the Army failed to follow its own procedure by sending the orders by certified mail, restricted delivery.

■ We first note our disagreement with appellant's assertion that a remand is necessary to determine whether he had notice of

his activation orders. The letter of July 1, 1975, and the activation order of November 10, 1975, were both sent by certified mail to appellant's last known mailing address and forwarded to his current address. Each time the post office notified appellant twice of attempted delivery. At the hearing before the district court appellant acknowledged that his wife informed him of the post office notices of the attempt to deliver the July 1975 letter. Appellant stated that his work as an over-the-road truck driver prevented him from claiming the letter. Appellant also acknowledged that he read the January 1976 letter to his wife informing her that appellant was AWOL and asking her cooperation in returning him to military control. As was stated by district courts in cases involving similar facts and allegations, "[appellant] cannot be allowed to pick and choose what mail he accepts and refuses ..., and then claim no notice of mail he refused," *Hoersch v. Froehlke,* 382 F.Supp. 1235, 1240 (E.D.Pa.1974), and "the history of the relationship between the [appellant] and his Reserve Unit strongly suggests that he had systematically failed to claim any certified mail forwarded to him by military authorities.... In such an instance, [appellant] may not subsequently complain of absence of notice." *United States ex rel. Niemann v. Greer,* 394 F.Supp. 249, 252 (D.N.J.1975). As does appellant in this case, the servicemen in *Hoersch* and *Greer* alleged that because

they never actually received their activation orders, they were not bound by the orders.[3]

■ Appellant also asserts that a remand is necessary to determine whether the Army followed its procedures in the mailing of the activation order. The government counters that a remand is unnecessary because Army regulation provides for the mailing of activation orders by certified mail to the last mailing address furnished by a member and that "return as undeliverable of orders ... does not change the fact that the member has been properly ordered to report to active duty." Army Regulation No. 135–91, ¶ 14(1).[4] The cited regulation certainly seems to support the Army's position. *See United States ex rel. Niemann v. Greer,* 394 F.Supp. at 251–52. We, however, do not need to decide this issue. In any event, a remand is unwarranted because we reject appellant's assertion that an alleged failure to follow Army regulations bars application of the *Feres* doctrine where it would otherwise be applicable. *Calhoun v. United States,* 475 F.Supp. 1, 4 (S.D.Cal. 1977), *aff'd,* 604 F.2d 647 (9th Cir.1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1029, 62 L.Ed.2d 761 (1980).

Therefore, the judgment of the district court is affirmed.

BRIGHT, Circuit Judge, dissenting.

I dissent from the application of the *Feres* doctrine to bar Anderson's action for

---

**3.** Appellant argues that because he did not "voluntarily" accept his orders, he was not subject to military control. He relies on *United States v. Schuering,* 16 C.M.A. 324 (1966). His reliance is misplaced. In *Schuering* the Court of Military Appeals held that a temporary duty order issued to a marine reservist was insufficient to subject him to military jurisdiction for the commission of a crime. But, "[c]ontrary to the contentions of appellant, the *Feres* doctrine extends beyond situations where the soldier is acting pursuant to orders or while subject to direct military command or discipline." *Woodside v. United States,* 606 F.2d 134, 141 (6th Cir.1979), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980).

**4.** The regulation provides:
   1. *Failure to report.* When a member has been properly ordered to report for active duty on the date specified in his orders and does not report, appropriate action will be

taken under AR 630–10 by the commander to whose installation he was ordered to report. Notification of order to active duty has been fully and sufficiently accomplished by the mailing of orders addressed to the member concerned at the mailing address which records of the activity mailing the orders indicate as the most recent one furnished by the member as an address from which official mail will be received by or forwarded to him. Absence of indication of delivery, or return as undeliverable, of orders addressed as above does not change the fact that the member has been properly ordered to report for active duty.
Army Regulation No. 135–91, ¶ 14(1). In addition, appellant's enlistment agreement required appellant to furnish the Army with all changes of address and to reply promptly to all military correspondence directed to him.

unlawful arrest under the Federal Tort Claims Act (FTCA). The *Feres* doctrine is a judicially-created exception to the broad waiver of governmental immunity contained in the FTCA. *See Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). The Act, by its own terms, does not prohibit servicepersons from suing the government, except when the claims arise out of combatant activities during times of war.[1] On the contrary, the Act's legislative history indicates that Congress did not intend to bar all tort claims by members of the armed services.[2] The *Feres* doctrine, therefore, must be applied with care, for the extension of the doctrine beyond its proper scope allows the judicially-created exception to countermand the language of the FTCA and the intent of Congress.

The *Feres* doctrine bars Anderson's claim only if his alleged injury arose out of or was in the course of "activity incident to service." 340 U.S. at 146, 71 S.Ct. at 159. The test is not purely causal. *Parker v. United States,* 611 F.2d 1007 (5th Cir.1980). Anderson's alleged injury, therefore, is not necessarily "incident to service" simply because, but for his outstanding military obligation, he would not have been arrested AWOL.

In this case, the facts that are usually considered indicative of "activity incident to service" are simply not present. *See, e.g., Miller v. United States,* 643 F.2d 481, 494 (8th Cir.1981) (in applying the *Feres* doctrine, the court considered the claimant's duty status, where the injury occurred, and what the claimant was doing at the time he was injured). Anderson had not reported for active duty, although he was ordered to do so. The incident did not occur on a military base. Anderson was arrested in the front yard of his private home. He was not availing himself of a privilege related to or dependent upon military status. He was not involved in any military mission or acting under the compulsion of military orders. Nor was he subject to the direct control and authority of his military superiors. On the contrary, the very purpose of the arrest was to establish that control.

The fact that Anderson had been ordered to active duty should not transform his alleged injury into one received "incident to service." Anderson never reported for active duty. Although his absence is unauthorized, his situation is akin to that of those servicepersons on leave, pass, or furlough, whom courts frequently permit to proceed under the FTCA. *See, e.g., Mills v. Tucker,* 499 F.2d 866 (9th Cir.1974) (survivors of a serviceman, who was on furlough when he was killed in a traffic accident on a navy-maintained road, could maintain an FTCA action). In all these cases, the serviceperson's absence, authorized or unauthorized, essentially eliminates that "peculiar and special relationship of the soldier to his superiors * * *" which renders the maintenance of FTCA actions by servicepersons disruptive to military discipline. *See, e.g., United States v. Carroll,* 369 F.2d 618, 621 (8th Cir.1966).[3]

---

**1.** *See* 28 U.S.C. § 2680(j) (1976 & Supp. V 1981).

**2.** Eighteen tort claims bills were introduced in Congress between 1925 and 1935 and all but two expressly denied recovery to members of the armed forces. The present FTCA, adopted in 1948, contains no such exception. *See Feres v. United States,* 340 U.S. 135, 139, 71 S.Ct. 153, 156, 95 L.Ed. 152 (1950).

**3.** The government cites only two cases which are arguably similar. In *Garrett v. United States,* 625 F.2d 712 (5th Cir.1980), *cert. denied,* 450 U.S. 918, 101 S.Ct. 1363, 67 L.Ed.2d 344 (1981), a member of the Marine Corps alleged that he had been negligently detained for two months between the expiration of his

enlistment contract and his formal discharge. The Fifth Circuit held that the *Feres* doctrine barred his FTCA action. This case is clearly distinguishable from the present case. In *Garrett,* the serviceperson had reported for active duty and indeed had served in the United States Marine Corps. Thus that "peculiar and special relationship of the soldier to his superior * * *" had been established.

In *Whitaker v. United States,* No. CV76–4051–LEW (C.D.Cal., June 8, 1977), the claimant had enlisted in the Army Reserves and subsequently was ordered to active duty. He failed to report to active duty and was ultimately arrested and detained. The court summarily dismissed his FTCA action, citing the *Feres* case with no discussion. To the extent that the dismissal is inconsistent with the

Not only do the facts contraindicate application of the *Feres* doctrine, but the rationale behind the judicial exception does not support its extension to this case. As previously mentioned, Anderson never established that "peculiar and special relationship of the soldier to his superiors * *." In addition, the Veterans' Benefits Act, although an adequate substitute for tort liability in some situations, offers no compensation to Anderson. Finally, because Anderson never reported for active duty, his "relationship" with the government as a member of its armed services can scarcely be characterized as such, much less as a "distinctively federal" relationship. This is not a situation where, if allowed to proceed under the FTCA, a serviceperson would be involuntarily subjected to the law of the jurisdiction where he or she was required to live. Anderson was at his own home in the jurisdiction of his own choosing at the time of his alleged injury. The law of that jurisdiction, therefore, should apply to Anderson's tort claim as it does in any FTCA action.

I recognize that Anderson technically was a member of the armed services. His enlistment contract had not terminated at the time of his arrest and his return to "civilian" status did not occur until he received his discharge from the United States Army effective July 14, 1977, nearly a year after his allegedly unlawful arrest. But that formal military status does not preclude this action. The *Feres* doctrine does not bar all tort claims by every serviceperson; it only prohibits claims for injuries sustained "incident to service." Application of the *Feres* doctrine to bar Anderson's claim for unlawful arrest simply because of his military status is therefore inappropriate. Accordingly, I would reverse and remand this case for further proceedings.

views expressed herein, I disagree with the    disposition of that case.